UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DELSIE E. BROOKENS,

               Plaintiff,

                                  Case No. 07-387

vs.

                                  Hon. Joseph J. Farnan, Jr.

GENERAL MOTORS CORPORATION,
a Delaware corporation; GENERAL MOTORS
CORPORATION, Plan Administrator, and
GM HOURLY-RATE EMPLOYEES PENSION
PLAN, an employee pension benefit plan,

               Defendants.

---

<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

David M. Davis (MI Bar No. 24006)
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800
Telecopier: (248) 645-2602

Margaret F. England (Del. Bar No. 4248)
Eckert, Seamans, Cherin & Mellott, LLC
300 Delaware Avenue, Ste. 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Telecopier: (302) 425-0432

Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DELSIE E. BROOKENS,

          Plaintiff,

                                        Case No. 07-387

vs.

                                        Hon. Joseph J. Farnan, Jr.

GENERAL MOTORS CORPORATION,
a Delaware corporation; GENERAL MOTORS
CORPORATION, Plan Administrator, and
GM HOURLY-RATE EMPLOYEES PENSION
PLAN, an employee pension benefit plan,

          Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      NOW COME the Defendants General Motors Corporation and the General Motors Hourly Rate Employees Pension Plan ("Defendants"), by and through their Attorneys David M. Davis of the law firm of Hardy, Lewis & Page, P.C. and Margaret England of the law firm Eckert, Seamans, Cherin & Mellott, LLC, and pursuant to F.R.C.P. 56, moves for summary judgment with respect to Plaintiff's claims in the above action. In support of this Motion, Defendants state as follows:

      1.      On June 18, 2007, Plaintiff filed this action seeking the payment of interest with respect to surviving spouse benefits that were paid to her in a lump sum in October, 2004, which represented surviving spouse benefits payable under the General Motors Hourly Rate Employees Pension Plan ("GM Pension Plan") during the period from March 1, 1992 through August, 2004.

      2.      The GM Pension Plan does not provide for the payment of interest. Further, the delay in paying Plaintiff the surviving spouse benefits was not due to any error or improper determination by General Motors, the Administrator of the GM Pension Plan.

3.      Rather, General Motors, although not obligated to do so, honored a domestic relations order entered subsequent to the death of David Brookens, Plaintiff's former husband, which purported to award surviving spouse benefits to Plaintiff.

4.      Plaintiff is not entitled to interest with respect to this delayed payment because (1) the GM Pension Plan does not provide for interest, and (2) General Motors was not at fault and did nothing improper which caused the delay of these payments.

5.      Further, Plaintiff's claims can not be maintained because she failed to exhaust available administrative appeal procedures as required under federal law, despite being advised to do so.

WHEREFORE the Defendants respectfully contend that their Motion for Summary Judgment should be granted, that Plaintiff's Complaint should be dismissed with prejudice, that Plaintiff take nothing by the filing of her Complaint, and for such other and further relief as appropriate.

Respectfully submitted,

s/ David M. Davis
David M. Davis
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
E-mail: dmd@hardylewis.com


s/ Margaret F. England
Margaret F. England (Bar No. 4248)
Local Counsel for Defendants
Eckert, Seamans, Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Dated: March 31, 2008        E-mail: mengland@eckertseamans.com

CERTIFICATE OF SERVICE

I, Margaret F. England, certify that on March 31, 2008, I caused a copy of

Defendants' Motion for Summary Judgment to be served in the manner indicated on:

John M. Stull, Esquire
Three Mill Road
P.O. Box 1947
Wilmington, DE  19899
**By U.S. Mail**

*/s/ Margaret F. England*
Margaret F. England (No. 4248)

*U0009857*

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DELSIE E. BROOKENS,

        Plaintiff,

        Case No. 07-387

vs.

        Hon. Joseph J. Farnan, Jr.

GENERAL MOTORS CORPORATION,
a Delaware corporation; GENERAL MOTORS
CORPORATION, Plan Administrator, and
GM HOURLY-RATE EMPLOYEES PENSION
PLAN, an employee pension benefit plan,

        Defendants.

---

## INDEX OF EXHIBITS

| **Exhibit** | **Description** |
|---|---|
| A | February 7, 2001 letter from the Pension Administration Center to Plaintiff |
| B | Plaintiff's Response to the PAC letter dated February 7, 2001, with attachments |
| C | January 23, 2002 letter from the PAC to Plaintiff |
| D | April 29, 2004 letter from the PAC to Plaintiff |
| E | May 13, 2004 letter from Plaintiff's counsel to the PAC |
| F | June 30, 2004 letter from Plaintiff's counsel to PAC |
| G | November 5 letter from the PAC to Plaintiff's Counsel |
| H | May 27, 2005 letter from Plaintiff's counsel to PAC |
| I | Unpublished cases |

# EXHIBIT A

CCL21 (Rev. 07/01)

Pension Administration Center
P.O. Box 5014
Southfield, Michigan 48086-5014
1-800-659-2000
Telecommunication Device for the Deaf
1-800-659-3311

February 7, 2001

Delsie Brookens
PO Box 9942
Newark, DE 19714

Re: D BROOKENS    S.S.# 194289268

Dear Delsie Brookens:

The Pension Administration Center recently received information that identified you as the surviving spouse of the above referenced former employee of General Motors Corporation.

Based on the provisions of the General Motors Hourly-Rate Employees Pension Plan or the General Motors Retirement Program for Salaried Employees, to be eligible to receive a deferred vested benefit, you must have been married to the former employee for at least one year prior to their date of death.

In order for us to validate your eligibility for a benefit, please provide a copy of the following documents in the return envelope enclosed for your convenience:

• Your Social Security Card          • Death Certificate
• Your Birth Certificate             • Marriage Certificate

Once the documents have been reviewed, we will contact you to inform you of your eligibility, and the process for commencing the benefit in the event you are eligible.

If you have any questions, please call the Pension Administration Center at 1-800-659-2000. Our hours are Monday through Friday, from 7:00 a.m. - 6:00 p.m. Eastern Time. Please have your deceased spouse's social security number available when calling so our customer service representatives may assist you more efficiently.

Sincerely,
Pension Administration Center

# EXHIBIT B

CLL.11 (Rev. 07/01)

Pension Administration Center
P.O. Box 5014
Southfield, Michigan 48086-5014
1-800-659-2000
Telecommunication Device for the Deaf
1-800-659-8311

February 7, 2001

Delsie Brookens
PO Box 9642
Newark, DE 19714

Re: D BROOKENS    S.S.# 194289268

Dear Delsie Brookens:

The Pension Administration Center recently received information that identified you as the surviving spouse of the above referenced former employee of General Motors Corporation.

Based on the provisions of the General Motors Hourly-Rate Employees Pension Plan or the General Motors Retirement Program for Salaried Employees, to be eligible to receive a deferred vested benefit, you must have been married to the former employee for at least one year prior to their date of death.

In order for us to validate your eligibility for a benefit, please provide a copy of the following documents in the return envelope enclosed for your convenience:

- Your Social Security Card
- Your Birth Certificate
- Death Certificate
- Marriage Certificate

Once the documents have been reviewed, we will contact you to inform you of your eligibility, and the process for commencing the benefit in the event you are eligible.

If you have any questions, please call the Pension Administration Center at 1-800-659-2000. Our hours are Monday through Friday, from 7:00 a.m. - 6:00 p.m. Eastern Time. Please have your deceased spouse's social security number available when calling so our customer service representatives may assist you more efficiently.

Sincerely,
Pension Administration Center

−149−

STATE BOARD OF HEALTH
DELAWARE
AUG 4 1937
VITAL STATISTICS DEPARTMENT

## STATE OF DELAWARE
## STANDARD CERTIFICATE OF BIRTH    2258

—PLACE OF BIRTH—

State File No..............
Registered No...16Δ...

County...New Castle.............................State of Delaware
Hundred................................or Village....................
City...Wilmington.............No...Homoeopathic Hospital...Del.....Ward
(If birth occurred in a hospital or institution, give its NAME instead of street and number)

2. Full name of child...Dolice, Ethel Gooden..............(If child is not yet named, make supplemental report as directed)

| 3. Sex female | 4. Twin, triplet, or other Single | 5. Number in order of birth | 6. Legitimate Yes | 7. Date of birth July 27th 1937 (month, day, year) |

**FATHER**

8. Full name...Merrill Harvey Gooden.

10. Residence (usual place of residence)...Del. R. D. #1

11. Color or race...white...  12. Age at last birthday...21...(years)

13. Birthplace (city or town)...Maryland...

14. Trade, profession, or particular kind of work done...Laborer...

15. Industry or business in which work was done or this kind...Potato Storage

16. Date (month and year) last engaged in this work...present...19 37

**MOTHER**

9. Full maiden name...Mary Rose Amross

10. Residence...Del. R. D. #1

11. Color or race...white...  12. Age at last birthday...22...(years)

13. Birthplace (city or town)...Delaware

14. Trade, profession, or particular kind of work...housewife.

15. Industry or business in which work was done...own home

16. Date (month and year) last engaged in this work...present...19 37

17. Number of children of this mother (a) born alive and now living...O (b) born alive and now dead...O (c) stillborn...O
Native Labor....................  Premature Labor..................  Creole

21. VERIFICATION OF NAME BY PARENT

Dolice Ethel Gooden                    Mary Amross Gooden
CORRECT NAME OF CHILD                  NAME OF PARENT

## CERTIFICATE OF ATTENDING PHYSICIAN OR MIDWIFE

I hereby certify that I attended the birth of this child, who was...born alive...4:10 P.M....on the date stated.

(Signed) Dr. Martin B. Bennington M.D.

Address...1917 N. 4th St....

AUG 5 1937

I CERTIFY THAT THIS IS A TRUE
COPY OF THE ORIGINAL RECORD
ISSUED • WILMINGTON, DELAWARE

DATE    AUG 22 1995

STATE REGISTRAR
OFFICE OF VITAL STATISTICS
DIVISION OF PUBLIC HEALTH

−151−

# This is to Certify

That on the 21st day of January

in the year of our Lord 1959

Mr. David I. Brookens

of Shady Grove, Pa.

and

Miss Delsie C. Gooden

of Wilmington, Dela

WERE BY ME UNITED IN

# Marriage

at 108 Delaware Avenue, Elkton, Maryland

According to the ordinance of God and the Laws

of the State of Maryland

Witnesses

Rev. R. G. Stengill



# EXHIBIT C

**Pension Administration Center**
P.O. Box 5014
Southfield, Michigan 48086-5014
**1-800-659-2000**
Telecommunication Device for the Deaf
1-800-659-8811

January 23, 2002

**Delsie Brookens**
**PO Box 9042**
**Newark, DE 19714**

Re: David Brookens, Sr    S.S.# 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

Dear Delsie Brookens:

The Pension Administration Center has reviewed the documents that you provided to substantiate your eligibility for deferred vested pension benefits, based on the above referenced deceased former employee's employment with General Motors Corporation.

In accordance with the provisions of the General Motors Hourly-Rate Employees Pension Plan or the General Motors Retirement Program for Salaried Employees, the benefit is payable *only* to a surviving spouse if the marriage was in effect for at least one year prior to the former employee's date of death. As you did not meet this requirement, there is no benefit payable.

If you have any questions, please call the Pension Administration Center at 1-800-659-2000 between the hours of 7:00 a.m. and 6:00 p.m., Eastern Time. Please have your deceased spouse's social security number available when calling the Center so our representatives may assist you more efficiently.

Sincerely,

Pension Administration Center

# EXHIBIT D

GM DELPHI

**Pension and CISA Administration Center**
P.O. Box 5014
Southfield, Michigan 48086-5014
(800) 659-2000
April 29, 2004
www.pension-administration.com

John M. Stull
Attorney at Law
1300 North Market Street, STE 700
PO Box 1947
Wilmington, DE 19899-1947

RE: David L. Brookens (deceased)
SSN: 194 28 9268

Dear Mr. Stull,

This is in response to your letter addressed to JoAnn Kitchen of General Motors Employee Benefits Staff dated February 23, 2004. The letter has been forwarded to the Pension Administration Center for response.

Mr. Brookens died March 5, 1991 and was divorced from his spouse, Delsie Brookens at that time. The Separation and Property Division Agreement dated April 30, 1990 contains a statement that Mr. Brookens was to designate Delsie as a beneficiary for any survivor benefits from his employer provided pension plan. Mr. Brookens was a participant in the General Motors Hourly-Rate Employees Pension Plan and was not eligible to retire at the date of his death. A former spouse is entitled to pre-retirement survivor benefits only if a Qualified Domestic Relations Order has preserved that right. The Separation Agreement you sent does not satisfy the QDRO requirements of the Employee Retirement Income Security Act of 1984, as amended, Section 206(d). Therefore, no survivor benefits are preserved for Delsie by that document. Because the Separation Agreement does demonstrate an intent to preserve the survivor option, a DRO can be prepared, entered with the court and submitted to the PAC for review. If 'qualified', it will be implemented prospectively based on the date received by the Center.

I am enclosing a QDRO booklet for your information and to assist you if you want to prepare a DRO assigning the survivor benefit. The booklet is designed for a broader use than just survivor benefits, so some sections will not apply to the Brookens case. The order you submit should address just the survivor benefit. Because Mr. Brookens was not eligible to retire at his date of death the only benefit available is the Pre-retirement survivor option.

Once prepared, the order should be submitted to the Pension Administration Center for review. It can be sent to the attention of PART, the team that handles QDROs. The address is in the booklet.

Sincerely,

COPY

Eleana Kay Mann
Account Specialist

# EXHIBIT E

**JOHN M. STULL**

ATTORNEY AT LAW
SUITE 700
1300 NORTH MARKET STREET
POST OFFICE BOX 1947
WILMINGTON, DELAWARE 19899-1947

---

(302) 654-0399
Fax: (302) 654-0884

May 13, 2004

MAY 1 7 2004

Pension and CISA Administration Center
Attn: PART
P. O. Box 5014
Southfield, MI 48086-5014

Legal File - imaged Only

    Re:    **Survivor Benefits; Alternate Payee Status of Delsie E.**
            **Brookens of GM Employee David I. Brookens**
            **(Deceased) SSN # 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; Certified QDRO from**
            **Family Court of State of Delaware; Request for**
            **Survivor Benefits of Delsie E. Brookens #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**

Dear Sirs:

        I respond to the April 29, 2004 letter from Eleana Kay Mann,
Account Specialist, who suggested I correspond with your unit for review of the
QDRO submitted herewith so as to retrieve survivor benefits under the pension
rights of David I. Brookens, deceased. My prior letter dated  February 23, 2004,
contained additional information so as to claim these benefits for Ms. Brookens
from the date Mr. Brookens died.  We reiterate those claims here and request that
your review include these claims and authority for retroactive benefits, based on
the enclosed QDRO, signed by the Family Court.

        You should also note that the QDR Order is issued "nunc pro
tunc," or effective as of April 30, 1990.  This means that the Order should operate
prospectively from the date Mr. Brookens died, subsequent to the date the Order is
effective.  Should your review need additional information or other legal authority
to justify Ms. Brookens' benefits claims which have existed for the last 13 years, I
would be pleased to enter discourse with either your Legal Department or with any
local counsel you designate, here in Delaware or nearby states.

        Thank you for your consideration and cooperation to date.  If

5-12-04

JOHN M. STULL, ESQ.

PART, GM Pension Administration Center
May 13, 2004
Page 2


your process requires correspondence with Ms. Brookens directly, please copy this office on any mailings. Otherwise, you may respond directly to the writer.


Yours very truly,

John M. Stull

JMS/prs
enclosure

IN THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| DELSIE E. BROOKENS | ) |
| Petitioner, | ) File No. CN89-10130 |
| | ) Petition No. 1580-89 |
| and | ) |
| | ) |
| DAVID I. BROOKENS (Deceased), | ) |
| Respondent, | ) |
| and | ) |
| Estate of David I. Brookens (R/W No. 99562). | ) |

## STIPULATED AMENDED QUALIFIED DOMESTIC RELATIONS ORDER

WHEREAS, the parties to this action were married on January 21, 1959, and divorced by this Court on December 26, 1989;

WHEREAS, this Court had prior jurisdiction and has continuing personal jurisdiction over both parties (through their representatives, and/or their marital interests as represented by property rights) in this action, in addition to jurisdiction to enter an Order (QDRO) formalizing survivor benefits by Order directed to the Plan Administrator of the General Motors Hourly-Rate Pension Plan and/or the General Motors Retirement Program for Salaried Employees, as may be applicable herein, and jurisdiction of the subject matter of this divorce action;

WHEREAS, the parties to this action and the Court intended to and do intend, by and through their representatives, that an Order be entered herewith to be a Qualified Domestic Relations Order as that term is used in the Retirement Equity Act of 1984, P.L. 98-397 (hereinafter "QDRO"); and

WHEREAS, the parties have previously stipulated that the Court shall enter an

Order in the format representing this Order,

NOW, therefore, it is hereby ordered by the Court this /2*th/ day of *May* ,

*nunc pro tunc April 30, 1990,*

200*f*, as follows:

1. Definitions: as used in this Order:

(a) The term "Participant," means DAVID I. BROOKENS, whose last known

address is 254 Reybold Road, Newark, DE 19702-3609.

(b) The term "Alternate Payee," means DELSIE E. BROOKENS, whose last

known address is P. O. Box 9042, Newark, Delaware 19714-9042.

(c) The term "Plan" means either or both the General Motors Retirement

Program for Salaried Employees, and/or the General Motors Hourly-Rate Employees

Pension Plan, as applicable, and as each such plan is currently in effect.

(d) The term "Plan Administrator" means that individual or entity appointed

as such pursuant to the terms of the respective Plan.

2. The Alternate Payee is the former spouse of the Participant.

3. This Order is entered pursuant to 13 Del.C. Section 1513 governing the

equitable distribution of marital property (as that term is defined therein) between

spouses and former spouses in divorce actions.

4. The Plan Administrator for the General Motors Retirement Program for

Salaried Employees and/or the General Motors Hourly-Rate Employees Retirement

Plan ("Plan") is ordered and directed to pay to Alternate Payee, Delsie E. Brookens, a

survivor benefit based on the amount of pension entitlement of Participant, as

available as of death of Participant in accordance with the terms of either or both

Plans and based on Alternate Payee status of Delsie E. Brookens as former spouse. Participant was deceased March 5, 1991, and prior to such time Alternate Payee was entitled to elect to receive a survivor benefit pursuant to provisions of a QDRO.

5.    The Plan Administrator is ordered to pay the above described survivor benefit from either or both Plans as would be available to a spousal survivor of Participant as of the date of his death on March 5, 1991, in an amount determined by either or both Plans to Alternate Payee, in an accumulated amount from and after March 5, 1991, to current date, via lump sum, with accumulated interest thereon,  as soon as administratively possible following entry of this Order.

6.    Copies of this Order shall be sent by ordinary mail by counsel for the parties (J. M. Stull, Esq.) to the Plan Administrator(s) which Plan Administrator(s) shall, pursuant to 29 U.S.C. Section 1056(d) (3)(G):

(a)  Promptly notify both the Participant's Estate and the Alternate Payee of receipt of the Order by the Plan Administrator(s) and the procedures of the Plan used to determine the qualified status of Domestic Relations Orders;

(b)  Within a reasonable period of time after receipt of a copy of this Order, determine whether this Order is a QDRO and notify the Court, the Participant's Estate and the Alternate Payee, and

(c)  Pending the determination of whether or not this Order is a QDRO establish such records as shall be necessary under the Plan(s) to determine the amounts which would have been payable to the Alternate Payee during such period since the death of Participant (3/5/91) and the date this Order has been entered and determined to be a Qualified Domestic Relations Order pursuant to 29 U.S.C. Section 1056(d)(3)(H)(i).

7. This Order is intended to be a qualified domestic relations order ("QDRO") made pursuant to the Retirement Equity Act of 1984 and provisions of this Order shall be administered and interpreted in accordance with that Act.

8. In the event this Order is subsequently modified by this or any other Court of competent jurisdiction, the Plan(s) shall have no duty to comply with such modification until and unless

(a) The Plan Administrator has received a copy of the Order setting forth such modification and,

(b) It is determined that each Order making such a modification be construed in conjunction with the original Order and all other modifications of this Order, to be a QDRO in accordance with each Plan's QDRO determination procedures.

9. This Court retains jurisdiction on this matter to amend this Order in accordance with comments and communications received from the Plan administrator in connection with the certification of this Order as a QDRO pursuant to each Plan's Administrator's QDRO Determination Procedures.

10. The parties shall use their best efforts taking such steps as shall be reasonable and appropriate to cause the Plan Administrator to comply with those provisions of this Order addressed to it.


_Delsie E. Brookens_____
DELSIE E. BROOKENS

_David I. Brookens Jr._____ (Executor, Executrix)
REPRESENTATIVES OF ESTATE OF DAVID I. BROOKENS
DAVID I. BROOKENS JR.

-186-

SO ORDERED THIS *12th* DAY OF *May* , 200*4*, *nunc pro tunc* *April 30, 1990.*

_Alison Whitmer Tumas_
JUDGE  *ALISON WHITMER TUMAS*

FAMILY COURT OF DELAWARE
FOR NEW CASTLE COUNTY
I hereby certify that the foregoing
is a true copy of the original as same
appears in the records of this Court this
Date _____
By _____
Clerk of Court

# EXHIBIT F

## JOHN M. STULL

ATTORNEY AT LAW
SUITE 700
1300 NORTH MARKET STREET
POST OFFICE BOX 1947
WILMINGTON, DELAWARE 19899-1947
---
(302) 654-0399
Fax: (302) 654-0884

June 30, 2004

Pension and CISA Administration Center
Attn: PART
P. O. Box 5014
Southfield, MI 48086-5014

Re:    Survivor Benefits; Alternate Payee Status of Delsie E.
Brookens of GM Employee David I. Brookens
(Deceased) SSN # 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; Certified QDRO from
Family Court of State of Delaware; Supplemental
Request for interest applied to delay in payment of
Survivor Benefits of Delsie E. Brookens #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

Dear Sirs:

I have previously responded May 13, 2004, to the April 29, 2004 letter from Eleana Kay Mann, Account Specialist, who suggested I correspond with your unit for review of the QDRO submitted therewith so as to retrieve survivor benefits under the pension rights of David I. Brookens, deceased. My prior letter dated February 23, 2004, contained additional information so as to claim these benefits for Ms. Brookens from the date Mr. Brookens died. I presented those claims and requested that your review include these claims and the case authority provided to you for retroactive benefits, based on a QDRO, signed by the Family Court and submitted May 13, 2004. I now provide you with further case authority to support our claims for compensation to Ms. Brookens for her not receiving survivor benefits payments timely over the last 13 years.

In addition to the back benefits, we here provide you with a reference for our claim for "interest" or other compensation on these delayed benefits, the authority for which is found in the recent Third Circuit decision in the matter of Skretvedt v. DuPont Company, et.al., with a cite of 2004 U.S.App. LEXUS 11944, dated June 16, 2004. As you will note from this opinion, interest

JOHN M. STULL, ESQ.

PART, GM Pension Administration Center
June 30, 2004
Page 2

on delayed benefits payments under an ERISA plan has now been authorized as an equitable claim even under the strictures of <u>Great-West v. Knudsen</u>, and regardless of whether the Plan involved pays the benefits under court order, or voluntarily. We therefore do ask that you provide us either with your conclusions as to the above claim(s), or indicate when we can anticipate payment or other finalization of these matters, to include appropriate compensation.

       Thank you for your consideration and cooperation to date. If your process requires correspondence with Ms. Brookens directly, please copy this office on any mailings. Otherwise, you may respond directly to the writer.

       Yours very truly,

       John M. Stull

JMS/prs

# EXHIBIT G

QRSQ (12/00)

**Pension and CISA Administration Center**
P.O. Box 5014
Southfield, Michigan 48086-5014
**1-800-659-2000**
Telecommunication Device for the Deaf
1-800-659-8811

November 5, 2004

John M Stull, Esq.                          Participant: D I Brookens
1300 N. Market St, Ste 700                  SSN: 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
Po Box 1947                                 Alt Payee: Delsie E Brookens, Esq.
Wilmington, DE 19899-1947                   SSN: 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
                                            Order Entered: 05/12/2004

On behalf of General Motors, the Plan Administrator, we have determined that the Order submitted for review is a Qualified Domestic Relations Order (QDRO) pursuant to Section 206(d)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, and Section 414(p) of the Internal Revenue Code of 1986 (IRC), as amended.

The Alternate Payee will be designated the surviving spouse for purposes of the Plan's pre-retirement surviving spouse benefit. The Alternate Payee is entitled to 100% of this benefit.

Survivor benefits to the Alternate Payee commenced effective September 1, 2004. The Alternate Payee's monthly surviving spouse benefit has been determined to be $169.27 per month. However, in October 2004, the Alternate Payee received a retroactive payment amount of $25,221.23, representing the monthly benefit for that month plus the benefits owed retroactive to March 1, 1992.

With respect to the matter of interest on the benefits payable to the Alternate Payee, the GM Hourly-Rate Employees Pension Plan does not contain any provision for the payment of interest. The Pension Administration Center is not able to deviate from the Plan language in processing the benefit payment. Any further inquiry on this matter must be addressed to the Plan Administrator at: Plan Administrator

GM Hourly-Rate Employees Pension Plan
General Motors Corporation
PO Box 300
MC: 482-C26-A68
300 Renaissance Center
Detroit, MI 48265-3000

The Order does not require the Plan to provide any other benefits to the Alternate Payee. If you have any questions, please write to the Pension and CISA Administration Center at the address shown at the top of this letter.

Pension Assignment Review Team (PART)
Pension and CISA Administration Center

cc: D I Brookens
    Delsie E Brookens, Esq.


    SRH

# EXHIBIT H

## JOHN M. STULL

ATTORNEY AT LAW
SUITE 700
1300 NORTH MARKET STREET
POST OFFICE BOX 1947
WILMINGTON, DELAWARE 19899-1947

---

(302) 654-0399
Fax: (302) 654-0884

*Rec. 8/31/07*
*From - Fidelity*
*Durham, N.C.*

May 27, 2005

Pension and CISA Administration Center
Attn: PART
P. O. Box 5014
Southfield, MI 48086-5014

      Re:    **Alternate Payee Status of Delsie E. Brookens of GM Employee David I. Brookens (Deceased) SSN # 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; Request for Interest on delayed payment of Survivor Benefits of Delsie E. Brookens #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**

Dear Sirs:

      This letter is to acknowledge with thanks on behalf of my Client Delsie Brookens who recently received delayed payment of back benefits as a result of the entry of a QDRO in New Castle County Family Court. I have previously enclosed a copy of the summary of these back benefit payments as a reference for your use with this letter claim for interest on these delayed benefits.

      The reason for this correspondence is to again call your attention to a recent Third Circuit case which was issued in June, 2004. This case provides legal support for an additional claim based on the award of back benefits and is comprised of "interest" on these delayed benefits. The authority for a claim for an additional amount characterized as interest is found in the decision of Skretvedt v. DuPont Company, et.al., 372 F.3d 193 (3d Cir.2004), and is dated June 16, 2004. As you will note from this opinion, interest on delayed benefits payments under an ERISA plan has now been authorized as an equitable claim even under the strictures of Great-West v. Knudsen, and regardless of whether the Plan involved pays the benefits under court order, or voluntarily. We therefore do ask that you consider such an additional claim as we would propose here and as I have attempted to calculate below. You should also note from the opinion cited that the Court seeks to impose a rate of "interest" that compensates on the basis of the value of the retained funds to the fiduciary, namely the Pension Trust.

PART, GM Pension Administration Center
May 27, 2005
Page 2


By taking the Total Benefits amount of $25,221.23 as indicated as shown on the previously attached reference of yearly totals, and restating these benefits as an annuity measured in monthly payments over a twelve and 2/3rds year period, the average amount due but unpaid is one-half of the total, or $12,610. Applying an average interest rate of 15% to such an unpaid balance computes to a yearly interest amount of $1,890. Multiplying this yearly interest amount by 12.6, or the number of years the average balance is outstanding, further computes to a total interest amount of $23,810. There is also case authority in Delaware to provide for interest on "interest" which is due as a delayed payment of said "interest." This case authority starts with a federal funds rate of, say, 5% and adds 5%, for a total rate of 10%. This approach dictates an interest amount of $1,780.

We would therefore make a claim for $23,810 as "interest" due on the September, 2004, payment of delayed benefits payments which have now been paid, plus $1,780, for a total of $25,590. Thank you for your past considerations. If your process requires correspondence with Ms. Brookens directly, please copy this office on any mailings. Otherwise, you may respond directly to the writer if the matter needs further discussion or elaboration as to the case citation above.

Failing any resolution from the above proposal, a federal claim will be filed in the District of Delaware to give impetus to the transaction.



Yours very truly,

*John M. Stull*

John M. Stull
Counsel to Delsie Brookens

JMS/prs

# EXHIBIT I

Westlaw.

225 Fed.Appx. 358                                                                                          Page 1
225 Fed.Appx. 358, 2007 WL 870388 (C.A.6 (Mich.)), 40 Employee Benefits Cas. 1923
**(Cite as: 225 Fed.Appx. 358)**

Hawkins-Dunn v. General Motors Corp.
C.A.6 (Mich.),2007.
This case was not selected for publication in the
Federal Reporter.Not for Publication in West's Fed-
eral Reporter See Fed. Rule of Appellate Procedure
32.1 generally governing citation of judicial de-
cisions issued on or after Jan. 1, 2007. See also
Sixth Circuit Rule 28. (Find CTA6 Rule 28)
United States Court of Appeals,Sixth Circuit.
Debra HAWKINS-DUNN, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION and Met-
ropolitan Life Insurance Company, Defendants-Ap-
pellees.
**No. 05-2124.**

March 22, 2007.

**Background:** Beneficiary of an extended disability
benefits plan governed by the Employee Retirement
Income Security Act (ERISA) sued her employer
and the plan administrator, challenging a termina-
tion of her benefits. The United States District
Court for the Eastern District of Michigan held in
favor of the defendants, and the beneficiary ap-
pealed.

**Holding:** The Court of Appeals, Merritt, Circuit
Judge, held that employer's determination that a
plan summary did not entitle the beneficiary to an
additional 0.8 years of participation in the plan, and
thus to disability benefits until age 65, was not ar-
bitrary and capricious.

Affirmed.

West Headnotes

**[1] Labor and Employment 231H ⟞572**

231H Labor and Employment
  231HVII Pension and Benefit Plans
    231HVII(H) Coverage and Benefits of Par-
ticular Types of Plans

231Hk570 Disability Plans
      231Hk572 k. Conditions Constituting
Disability. Most Cited Cases
Employer's determination that an ERISA plan sum-
mary did not conflict with the terms of the plan so
as to entitle a beneficiary to an additional 0.8 years
of participation, and thus to disability benefits until
age 65, was not arbitrary and capricious; even if the
provision at issue did allow for an employee hired
in 1977 to add pension credit to her years of parti-
cipation under the disability plan, the beneficiary's
eligibility for benefits under the disability plan was
determined "as of the day on which [her] disability
commenced," and thus, she could not add the credit
she received for an approved leave of absence that
occurred after that date to the years of participation
she had on that date. Employee Retirement Income
Security Act of 1974, § 2 et seq., 29 U.S.C.A. §
1001 et seq.

**[2] Federal Courts 170B ⟞634**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(D) Presentation and Reservation in
Lower Court of Grounds of Review
      170BVIII(D)2 Objections and Exceptions
        170Bk634 k. Amount or Extent of Re-
lief; Costs; Judgment. Most Cited Cases

**Federal Courts 170B ⟞712**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(H) Briefs
      170Bk712 k. Briefs in General. Most
Cited Cases
Court of Appeals would not reach an ERISA plan
beneficiary's request for attorney fees where the re-
quest was never properly briefed or ruled upon in
the district court. Employee Retirement Income Se-
curity Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001
et seq.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 Fed.Appx. 358
225 Fed.Appx. 358, 2007 WL 870388 (C.A.6 (Mich.)), 40 Employee Benefits Cas. 1923
**(Cite as: 225 Fed.Appx. 358)**

Page 2

*358 On Appeal from the United States District Court for the Eastern District of Michigan.

BEFORE: BOGGS, Chief Judge; MERRITT, and MOORE, Circuit Judges.

MERRITT, Circuit Judge.
**1 In this ERISA action, Debra Hawkins-Dunn appeals the District Court's holding that she is not entitled to an additional 0.8 years of participation under the Extended Disability Benefits plan of her former employer, General Motors.FN1 Because General Motors' interpretation of the disability plan is not arbitrary and capricious, we affirm the District Court's decision. We also deny Hawkins-Dunn's request for attorney's*359 fees because the issue was not properly raised in the District Court.

> FN1. In the District Court, Hawkins-Dunn also claimed she was entitled to additional service time under General Motors' pension plan. The District Court held that she is entitled to the additional pension credit and General Motors does not contest that decision on appeal.

**I.**

Hawkins-Dunn began working for General Motors on August 15, 1977. As a member of the United Auto Workers, she participated in General Motors' pension and long-term disability insurance plans. Hawkins-Dunn worked for General Motors until she became disabled on January 27, 1987. She returned to work for two brief periods in 1987, but neither was long enough to "reset" January 27 as her disability leave date under the terms of the GM disability plan. As of January 27, 1987, Hawkins-Dunn had worked for General Motors for nine years and seven months.

Pursuant to General Motors' leave policies, Hawkins-Dunn received Sickness & Accident Benefits for the first 52 weeks that she was unable to work, ending March 7, 1988. At this point, she began receiving Extended Disability Benefits. Un-

der the Extended Disability Benefits Plan, the length of time an employee is eligible to receive disability payments depends principally on whether an employee has accrued ten years of participation under the plan. More specifically, an employee with ten (or more) years of participation on the date the disability begins is entitled to receive disability benefits until age 65. An employee with less than ten years, on the other hand, will receive disability benefits for a period of time equal to her years of participation. FN2

> FN2. Article II, section 7(c) of the Extended Disability Benefits Plan describes the benefit period as follows:
>
> In the case of an employe [sic] ... who has ten or more Years of Participation as of the day on which the disability commenced, the [period] commencing with the month in which the date of the expiration of ... weekly Sickness and Accident Benefits occurs and terminating with the end of the month in which the employe attains age 65.
>
> [I]n the case of an employe who has less than ten Years of Participation as of the day on which the disability commenced, the [amount of time] by which the employe's Years of Participation at commencement of disability exceed [s] the maximum number of weeks for which he is entitled to receive Sickness and Accident Benefits.
> J.A. 103

Hawkins-Dunn continued to receive monthly disability payments from March 1988 until April 2000, when an analyst at Metropolitan Life Insurance Company, the plan administrator, discovered that her benefits should have terminated in March 1996, based on her 9.6 years of participation at the time her disability commenced. The insurer subsequently communicated this finding to Hawkins-Dunn and ceased her disability payments.FN3

> FN3. General Motors waived recovery of all but the last year of disability benefits overpayments. The remaining overpayment was more than offset by the fact that the insurer had been using an incorrect (and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 Fed.Appx. 358

225 Fed.Appx. 358, 2007 WL 870388 (C.A.6 (Mich.)), 40 Employee Benefits Cas. 1923

(Cite as: 225 Fed.Appx. 358)

Page 3

lower) rate in computing her disability payments. As a result of this offset, Hawkins-Dunn received a net payment of $3,390.60.

In an effort to reinstate her benefits, Hawkins-Dunn contacted a representative of the United Auto Workers and asked whether General Motors and Metropolitan Life were mistaken in their conclusion that she had not attained ten years of participation in the plan. Ron Graham, from the UAW's Benefit Plans Section, responded by letter on July 27, 2004:

I have concluded my inquiry about the issue you brought to my attention about your eligibility for extended disability benefits until you turn 65.

The records show that your first day of disability (sick leave) was January 27, 1987. At that time, you had 9.6 years of credited service. In order to have your **360** extended disability benefits continue to age 65, on January 27, 1987, you would have to have had 10 years of credited service. Your plant seniority date was August 15, 1977, and your last day worked was January 27, 1987, by the calender you were over 6 months short of 10 years.

**\*\*2** An audit of your credited service is enclosed. Two UAW International Representatives from the UAW G.M. Department Benefits Staff had checked this issue for you before. They both came up with the results on your inquiry that I did and I have included both of those responses for your records. You should already have copies, but I am including these answers again.

J.A. 67-68. Hawkins-Dunn continued to complain to Graham about the denial of continued disability benefits, so Graham contacted Elizabeth LaMarra, an insurance specialist at General Motors. LaMarra responded by letter on August 25, 2004, assuring Graham that his analysis was correct. J.A. 69-70.

In the District Court, Hawkins-Dunn claimed she was entitled to additional credited service under the Pension Plan and the disability plan. The District Court concluded that Hawkins-Dunn had earned an additional 0.8 years of service time under the Pen-

sion Plan on account of a plan provision that awards service credit for corporation-approved leaves of absence. Specifically the court found that a 1992 worker's compensation settlement between Hawkins-Dunn and General Motors rendered a portion of her first year of disability leave a corporation-approved leave of absence. The court held that this additional credit did not apply under the disability plan because it was earned after the date on which Hawkins-Dunn commenced disability leave.

## II.

Under ERISA § 502(a)(1)(B), a participant in an employee benefit plan may bring an action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where, as here, the benefit plan in question gives the plan administrator authority to construe the terms of the plan, courts will only overturn the administrator's decision if it is arbitrary and capricious. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 114-15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This court reviews the District Court's application of the arbitrary and capricious standard de novo.

An interpretation of an employee benefit plan is not arbitrary and capricious when the reading is "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). This standard recognizes that each interpretation of an employee benefit plan "implicates the rights of other members of the plan" and by ensuring that an administrator's decision is rational "the courts contribute to consistency and fairness in plan administration." *Id.*

The resolution to this dispute over Hawkins-Dunn's service time turns on the interpretation and application of the terms of General Motors' disability plan. As excerpted above, the disability plan states that an employee's "years of participation" for the purposes of calculating disability benefits is determined "as of the day on which the disability com-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 Fed.Appx. 358                                                                                    Page 4
225 Fed.Appx. 358, 2007 WL 870388 (C.A.6 (Mich.)), 40 Employee Benefits Cas. 1923
(Cite as: 225 Fed.Appx. 358)

menced." J.A. 51, 103. It is undisputed that, as of January 27, 1987, when Hawkins-Dunn's disability commenced, she had accumulated 9.6 years of service time, just short of the ten years needed to become eligible for disability benefits until age 65. In light of this fact, we agree with the District Court's conclusion that General Motors' determination *361 that Hawkins-Dunn has less than ten years of participation under the disability plan was not arbitrary or capricious.

**3 [1] Hawkins-Dunn argues that a provision in General Motors' insurance plan summary entitled "What you should know about your Benefits for hourly employees" conflicts with the language in the disability plan and compels a finding that she is entitled to more than ten years of participation.[FN4] Specifically, Hawkins-Dunn points to language in the plan summary under the heading "Years of Participation under the Insurance Plan" that states, "For insurance purposes, your credited service accrued on and after October 1, 1975 under the Pension Plan will be added to your years of participation under the Group Life and Disability Insurance Program as of September 30, 1975." J.A. 78. Hawkins-Dunn interprets this provision to allow her to use her credited service under the pension plan, which all parties agree is in excess of ten years, to qualify for the additional disability benefits.

> FN4. Where the language in a plan summary conflicts with the terms of the benefit plan itself, the provision in the plan summary controls. *University Hosps. of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839, 850-51 (6th Cir.2000).

We begin by noting that Hawkins-Dunn's interpretation is not the only, or even the most plausible, interpretation of the summary plan language cited. Instead, the provision allows an employee to add credited service under the pension plan accrued after October 1, 1975, to the years of participation earned by the employee prior to September 30, 1975. Since Hawkins-Dunn did not begin working

at General Motors until 1977, this provision appears to have no relevance to her benefit calculations.

Further, even if this provision did somehow allow for an employee hired in 1977 to add pension credit to her years of participation under the insurance plan, Hawkins-Dunn's eligibility for benefits under the disability plan is determined "as of the day on which [her] disability commenced." J.A. 103. Thus, as the District Court observed, she cannot add the credit she received for a corporation-approved leave of absence that occurred after January 27, 1987, to the years of participation she had on that date.

Reading the provision of the plan summary cited by Hawkins-Dunn in light of the summary's surrounding provisions further supports the conclusion that General Motors' interpretation is not arbitrary or capricious. The section titled "Years of Participation under the Insurance Plan" sets forth a method for changing the way General Motors calculated years of participation. The section is broken into three subsections: 1) Prior to September 1, 1950; 2) For the Period September 1, 1950 to October 1, 1975 and 3) On and After October 1, 1975. The language highlighted by Hawkins-Dunn is in the last of these subsections.

A close inspection of the three subsections shows that the language of the second subsection more closely mirrors the interpretation Hawkins-Dunn is trying to assign to the third subsection. The second, or interim, subsection provides in part, "If your credited service under the Pension Plan is greater than your years of participation, credited service may be used instead of years of participation." J.A. 78. If General Motors intended for employees to be able to use their credited service for the pension plan for insurance purposes, this straightforward provision would have appeared in the third, forward-looking section. The company's decision not to employ this same provision in the final subsection indicates that the third subsection has a different meaning, such as the one described above.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

225 Fed.Appx. 358
225 Fed.Appx. 358, 2007 WL 870388 (C.A.6 (Mich.)), 40 Employee Benefits Cas. 1923
**(Cite as: 225 Fed.Appx. 358)**

Since the interpretation *362 urged by Hawkins-Dunn is inconsistent with the language of the plan summary, we cannot say that General Motors' interpretation is arbitrary and capricious.

**4 [2] Hawkins-Dunn also requests this court to order the defendants to pay her attorney's fees relating to her District Court victory on her pension claim. Since the request was never properly briefed or ruled upon in the District Court, we decline to reach it.[FN5]

> FN5. The record contains only one reference to attorney's fees; it appears in the second-to-last line of Hawkins-Dunn's 13-page response to General Motors' motion to affirm the administrator's decision. In its order, the District Court did not address this passing request.

For the foregoing reasons, we affirm the decision of the district court.

C.A.6 (Mich.),2007.
Hawkins-Dunn v. General Motors Corp.
225 Fed.Appx. 358, 2007 WL 870388 (C.A.6 (Mich.)), 40 Employee Benefits Cas. 1923

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

39 F.3d 1182
39 F.3d 1182, 1994 WL 592944 (C.A.6 (Mich.))
**(Cite as: 39 F.3d 1182, 39 F.3d 1182 (Table))**

Page 1

Lord v. General Motors Corp.
C.A.6 (Mich.),1994.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appear-
ing in the Federal Reporter. Use FI CTA6 Rule 28
and FI CTA6 IOP 206 for rules regarding the cita-
tion of unpublished opinions.)
United States Court of Appeals, Sixth Circuit.
Ray LORD, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION, Defend-
ant-Appellant.
**No. 93-2250.**

Oct. 27, 1994.

On Appeal from the United States District Court,
for the Eastern District of Michigan, No. 92-10280;
Robert H. Cleland, Judge.
E.D.Mich.

AFFIRMED.

Before: BROWN, MARTIN, and BOGGS, Circuit
Judges.

PER CURIAM.
**\*1** Ray Lord brought this suit to terminate his pen-
sion under the Employee Retirement Income Secur-
ity Act of 1974, 29 U.S.C. §§ 1132(a)(1)(B) and
(e)(1), and to exercise his right to return to work at
General Motors Corporation. He now appeals the
district court's grant of summary judgment in favor
of General Motors. Lord claims that General Mo-
tors' determination that he continued to be totally
and permanently disabled was "arbitrary and capri-
cious," and that the district court misinterpreted rel-
evant provisions of the applicable pension plan. For
the reasons set forth below, we affirm the district
court's ruling.

I.

As a result of head injuries suffered in a car acci-
dent, Lord has received a pension under General
Motors' Hourly-Rate Employee Pension Plan since
1981. That plan, as amended and incorporated into
the 1987 Supplemental Agreement Covering Pen-
sion Plan, was in effect from October 1, 1987, until
October 1, 1990. Section 3(a) of the Supplemental
Agreement Covering Pension Plan establishes a
Board of Administration, composed of three mem-
bers appointed by United Automobile Workers and
three appointed by General Motors. That Section
also authorizes the Board of Administration to re-
solve disputes arising under the pension plan and
establishes a four-member quorum requirement.

Section 3(c) provides that Board of Administration
members "shall work out matters," such as "how
disputes over total and permanent disability will be
handled." In accordance with this provision, the
Board of Administration enacted specific proced-
ures for determining whether an employee is totally
and permanently disabled. However, the Board of
Administration failed to enumerate procedures for
settling disputes arising from a pensioner's claim
that he is no longer totally and permanently dis-
abled. Instead, United Automobile Workers and
General Motors resolved those disputes in accord-
ance with informal, but agreed-upon, procedures.
Typically in those rare instances, two representat-
ives of the Board of Administration agreed to have
the pensioner re-examined by the same clinic or
doctor who last examined him, in order to determ-
ine whether his condition had changed so as to war-
rant ceasing his disability pension. Moreover, Gen-
eral Motors and United Automobile Workers, pur-
suant to their collective bargaining agreement,
agreed that the determination of the clinic or doctor
would be final and binding. Thus, if the clinic or
doctor determined that the pensioner remained
totally and permanently disabled, the disability pen-
sion continued.

In November 1985, General Motors first reviewed
Lord's entitlement to total and permanent disability

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

benefits, concluding that Lord was no longer totally and permanently disabled and could return to work, with certain restrictions. Unsatisfied with this determination, the local union then requested an impartial clinic examination on Lord's behalf. Accordingly, Dr. Ben Farah examined Lord in 1986. After referring Lord to a specialist, Dr. Cole, Dr. Farah ultimately concluded that Lord was wholly and permanently disabled. As a result of this medical determination, Lord continued to receive his disability pension.

**\*2** In June 1989, however, Lord presented General Motors' medical department with a recommendation from his physician, Dr. Pavonne, stating that Lord could return to work, with certain restrictions. Dr. Gerrick, the plant medical doctor, examined Lord, reviewed other available medical reports, and discussed Lord's medical condition with Dr. Pavonne. Given Lord's medical restrictions, no appropriate job could be identified.

At United Automobile Workers' request, Dr. Farah re-examined Lord on August 2, 1990. Echoing his 1986 recommendation, Dr. Farah again determined that Lord was totally and permanently disabled. Dr. Cole, the specialist who examined Lord in 1986, also re-examined Lord, on August 14 and December 11, 1990. Although his August report indicated that Lord was not suffering from any condition that should preclude working, his December report observed that Lord suffered from disequilibrium and imposed significant employment restrictions on Lord.

## II.

We review a district court's grant of summary judgment *de novo. Moore v. Holbrook,* 2 F.3d 697, 698 (6th Cir.1993). Under Fed.R.Civ.P. 56(c), summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The Court views all evidence before it in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio,* 475 U.S. 574, 587 (1986).

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53-54 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). The "arbitrary and capricious" standard of review applies when a plan affords the administrator discretionary authority to construe the terms of the plan or to determine eligibility. *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689 (6th Cir.1989), *cert. denied,*495 U.S. 905 (1990). Here, Section 3(a) of the Supplemental Agreement Covering Pension Plan empowered the Board of Administration to make final decisions regarding matters within its authority. In addition, Section 3(c) authorized the Board of Administration to formulate procedures for resolving disputes. The procedures enacted generally provided that independent doctors were to make final and binding determinations concerning benefit eligibility. Therefore, in view of this discretionary authority vested in the administrator, the "arbitrary and capricious" standard applies.

Recognizing the "efficient pension administration" rationale behind this standard of review, this Court has explained that decisions denying eligibility for benefits are not arbitrary and capricious provided they are "rational in light of the plan's provisions." *Daniel v. Eaton Corp.,* 839 F.2d 263, 267 (6th Cir.), *cert. denied,*488 U.S. 826 (1988). In the instant case, General Motors' determination that Lord remained totally and permanently disabled was neither arbitrary nor capricious. The ultimate findings of Dr. Farah, Dr. Cole, and Lord's own physician, Dr. Pavonne, supported the same conclusion: that Lord remained totally and permanently disabled. Moreover, the language of Section 3(c) of the Supplemental Agreement Covering Pension Plan contemplated the kind of informal disability determination made in this case. That Section merely authorized the Board of Administration to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

39 F.3d 1182
39 F.3d 1182, 1994 WL 592944 (C.A.6 (Mich.))
**(Cite as: 39 F.3d 1182, 39 F.3d 1182 (Table))**

Page 3

"work out matters," such as "how disputes over total and permanent disability claims will be handled." Given this broad language, Lord's argument that all dispute resolution procedures must be adopted by the Board of Administration at a Board Meeting, with the required quorum present, is without merit.

**\*3** The decision of the district court is AFFIRMED.

C.A.6 (Mich.),1994.
Lord v. General Motors Corp.
39 F.3d 1182, 1994 WL 592944 (C.A.6 (Mich.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                        Page 1
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
(Cite as: Slip Copy)

▷
Skretvedt v. E.I. Du Pont de Nemours and Co.
D.Del.,2006.

United States District Court,D. Delaware.
Orrin T. SKRETVEDT, Plaintiff,
v.
E.I. DU PONT DE NEMOURS AND COMPANY,
et al., Defendants.
**No. CA NO. 98-61(MPT).**

Dec. 11, 2006.

John M. Stull, Wilmington, Delaware, for plaintiff
Orrin T. Skretvedt.
Mary E. Cooper, Kathleen Furey McDonough, and
Elizabeth King, Potter, Anderson & Corroon, LLP,
Wilmington, Delaware, Evelyn H. Brantley, E.I. du
Pont Nemours and Company, Wilmington,
Delaware, for defendant E.I. du Pont de Nemours
and Company.

*MEMORANDUM OPINION*

THYNGE, Magistrate J.

*1 This matter was remanded by the United States
Court of Appeals for the Third Circuit, which re-
versed this court's finding that *Great-West Life &
Annuity Insurance Co. v. Knudson*[FN1] precluded
Skretvedt's claims for prejudgment interest on an
award of incapability benefits ("INCAP") and in-
terest on the delayed payment of total and perman-
ent disability Plan benefits ("T & P"). The Third
Circuit held that *Great-West* does not apply to
Skretvedt's claim for prejudgment interest with re-
spect to incapability benefits awarded pursuant to a
court judgment under Employee Retirement Income
Security Act ("ERISA") § 502(a)(1)(B).[FN2] The
Third Circuit also held, with respect to his claim for
Interest on the delayed payment of T & P benefits,
that *Great-West* does not preclude a claim under
ERISA § 502(a)(3)(B) [FN3] for restitution by way
of a constructive trust on interest earned on with-
held benefits.[FN4]

FN1.534 U.S. 204 (2002) (*"Great-West"*).

FN2.29 U.S.C. § 1132(a)(1)(B).

FN3.29 U.S.C. § 1132(a)(3)(B).

FN4.*See Skretvedt v. E.I. du Pont de
Nemours and Co.*, 372 F.3d 193, 205 (3d
Cir.2004) (*"Skretvedt II"*).

The court must determine whether Skretvedt: (1)
may recover prejudgment interest on the award of
INCAP benefits under § 502(a)(1)(B); (2) is en-
titled to interest for delayed payment of T & P be-
nefits under § 502(a)(3)(B); (3) should receive
postjudgment interest under 28 U.S.C. § 1961 for
INCAP benefits; and (4) the applicable interest rate,
if any, to be applied to each form of recovery. The
court will utilize the Third Circuit's analysis in
*Skretvedt II* to determine whether any interest is
due, and if so, what interest rate should be applied.

Under *Skretvedt II*, a prevailing plaintiff may obtain
prejudgment interest under § 502(a)(1)(B) for bene-
fits awarded.[FN5]The issues before the court are
whether

FN5.*See Skretvedt II*, 372 F.3d at 205, 208.

Skretvedt is entitled in light of this opinion to pre-
judgment interest on the award of incapability be-
nefits and/or interest on the delayed payment of T
& P benefits, without prejudice to Skretvedt's abil-
ity to file a timely motion for postjudgment interest
on any resulting award of prejudgment interest
(with respect to incapability benefits) or interest
(with respect to T & P benefits).[FN6]

FN6.*Id.* at 218.

In order to analyze the foregoing issues, it is neces-
sary to review the relevant facts.

BACKGROUND [FN7]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

FN7. A more detailed statement of the facts underlying the parties' dispute can be found in *Skretvedt v. E.I. du Pont de Nemours & Co.,* 268 F.3d 167, 170-73 (3d Cir.2001) (*"Skretvedt I"*).

Skretvedt was employed by E.I. du Pont de Nemours and Company [FN8] from June 28, 1974 to February 7, 1995. In early 1994, when he began to receive treatment from his family physician for work-related anxiety, Skretvedt was working as a Senior Research Environmental Engineer. Skretvedt took a leave of absence from his job at DuPont on November 11, 1994, and did not, thereafter, return to work. During this time, DuPont investigated whether Skretvedt qualified for disability benefits. For reasons that the parties dispute, DuPont terminated Skretvedt's employment on February 7, 1995.

FN8. The court collectively refers to Defendants' ERISA Planss and Skretvedt's former employer as "DuPont."

Skretvedt filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging that DuPont violated the Americans with Disabilities Act for firing him based on discrimination because of his anxiety disorder. The EEOC found no violation based on the information that Skretvedt submitted, and issued Skretvedt a right-to-sue letter. On September 29, 1995, acting on advice of counsel, Skretvedt signed a "Settlement Agreement and Release of All Claims" with DuPont. This agreement "released all of [Skretvedt's] employment-related claims against DuPont except for his application for disability benefits, which DuPont agreed to review in a 'neutral' manner."[FN9]Skredvedt applied for disability benefits under the Plan on October 1, 1995.

FN9.*Skretvedt I,* 268 F.3d at 171.

**\*2** Following the settlement agreement, DuPont's three-member Board of Benefits and Pensions ("Board") reviewed Skretvedt's application for dis-

ability benefits and determined on May 23, 1996 that he was ineligible because, according to the Board, Skretvedt failed to show that he was "permanently incapable of performing the duties of [his] job with the degree of efficiency required by the Company, at the time of [his] termination."FN10Skretvedt was advised that, in order to succeed on an appeal of the Board's determination, he would have to submit "additional objective evidence that will indicate a total impairment of function,"[FN11] such as "MRI, X-ray reports and complete medical evaluations."[FN12]Skretvedt contended, and DuPont denied, that he and one of his doctors sent three letters to the Board's designate for appeals, requesting clarification of the types of "objective medical evidence" needed to perfect his application on appeal because the nature of his alleged disability is psychological. After receiving no response to those letters, Skretvedt submitted a formal appeal to the Board on May 16, 1997.

FN10.*Id.* at 172.

FN11.*Id.*

FN12.*Id.*

Thereafter, Skretvedt initiated the present action on February 4, 1998, in which he alleges that: (1) the Board's denial of benefits was arbitrary and capricious; and (2) a conflict of interest existed in the evaluation of his application for benefits.FN13On August 31, 1998, pursuant to a stipulation between the parties, the court ordered a stay of the instant action to complete the appeal process and further ordered that only the final decision of the Board would be subject to judicial review.

FN13. In its Answer, DuPont responded that Skretvedt failed to exhaust his administrative remedies prior to filing his lawsuit, and therefore, the court had no jurisdiction over the matter.

In October 1998, Skretvedt submitted to the Board

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

updated opinion letters from his treating physicians, Dr. Harold Binhammer and Dr. Graenum Schiff, as well as a psychological report and opinion letter from Dr. Richard B. Zonderman. Each letter stated that Skretvedt was unable to return to his position at DuPont. Skretvedt also enclosed the "Explanation of Determination" from the Social Security Administration which, in the denial of benefits, concluded that Skretvedt's "condition prevents [him] from doing the type of work that [he] has done in the past," but specifically noted that his disability "does not prevent [him] from doing less demanding work that does not require extensive public contact."FN14

> FN14.*Skretvedt I,* 268 F.3d at 172-73 (alteration in original).

After his termination from DuPont in mid-1995, Skretvedt started a furniture repair and refinishing business. The business earned a modest profit that year and lost money in 1996. Therefore, in May 1996, Skretvedt began a two year training period with the Virginia Department of Labor for a position as a compliance inspector. He continued in this position without difficulty until the end of his training period. When his responsibilities increased, however, his anxiety returned. On August 17, 1998, Dr. Schiff recommended that Skretvedt take a two month medical leave of absence. Skretvedt subsequently resigned from the Virginia Department of Labor and never returned from his medical leave.

**\*3** On October 13, 1998, the Board issued a final denial of Skretvedt's appeal for disability benefits. Thereafter, the stay in this case was lifted and the parties filed cross-motions for summary judgment. The court granted summary judgment in favor of DuPont on September 6, 2000. Skretvedt appealed and the Third Circuit held that, under the arbitrary and capricious standard, DuPont's denial of INCAP benefits was not supported by substantial evidence.FN15

> FN15.*See id.* at 184 ("Because the medical evidence that Skretvedt presented makes it

clear that he meets the eligibility standards for incapability benefits, and the Board can point to no conflicting medical evidence, we find that the Board's decision was arbitrary and capricious because it was 'without reason' and it was 'unsupported by substantial evidence.' ") (citing *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 393 (3d Cir.2000) (quoting *Abnathva v. Hoffman-La Roche Inc.,* 2 F.3d 40, 46 (3d Cir.1993))).

The Third Circuit remanded the matter, directing the court to grant summary judgment in favor of Skretvedt on his claim for INCAP benefits.FN16Further, in *Skretvedt I,* the Third Circuit vacated summary judgment for DuPont on the Board's denial of T & P benefits.FN17Thereafter, this court issued an order on December 13, 2001 directing DuPont to pay Skretvedt INCAP benefits. DuPont paid those benefits on March 6, 2002. Furthermore, despite no court order directing DuPont to pay T & P benefits, DuPont also paid Skretvedt T & P benefits on the same date.FN18

> FN16.*See Skretvedt I,* 268 F.3d at 184.

> FN17.*See id.* at 185.Although the Third Circuit also vacated the court's order granting summary judgment on the count challenging the denial of Skretvedt's application for T & P benefits, it assumed "that the District Court will direct that DuPont's Board consider this claim in the *first instance,* since even though [Skretvedt] is incapable of performing the duties of his previous position at DuPont, he may nevertheless be ineligible for T & P benefits."*Id.* (emphasis added).

> FN18.  Subsequently, DuPont adjusted Skretvedt's INCAP and T & P benefits, in his favor, on April 15, 2002 and again on April 16, 2002.

On April 1, 2002, Skretvedt filed an opening brief

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 4
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

in support of his claims for short-term disability benefits, interest on delayed payment of benefits and related tax reimbursement claims.[FN19]The court denied Skretvedt's motion on August 21, 2002. Skretvedt moved for reconsideration on September 4, 2002, which was denied on November 12, 2002. Skretvedt filed a notice of appeal on September 20, 2002. Skretvedt then filed an amended notice of appeal, seeking a review of the August 21, 2002 and November 12, 2002 decisions. The Third Circuit issued *Skretvedt II* on June 16, 2004 with the rulings and remand directions discussed above.

> FN19. No motion accompanied Skretvedt's brief as required by our local rules, and the brief failed to specify the action or remedy requested. It did, however, mention in the conclusion, the word "interest."

On October 3, 2005 Skretvedt filed his opening brief for interest on delayed payments of employee benefits seeking prejudgment interest beginning February 8, 1995 and postjudgement interest.[FN20]

> FN20. Further briefing was ordered by the court and in September 2006 the supplemental briefing was completed.

DISCUSSION

After careful review of the facts in this matter and the Third Circuit's opinions in *Skretvedt I* and *Skretvedt II,* the court finds that Skretvedt is entitled to collect prejudgment interest on his INCAP benefits with a start date of February 8, 1995 (the beginning date when funds were withheld), but not entitled to interest on the delayed payment of his T & P benefits. Further, the court finds that, at this time, no award of postjudgment interest is allowed under 28 U.S.C. § 1961.

A. Prejudgment Interest of INCAP Benefits

*1. Denial of INCAP Benefits was Arbitrary and Capricious*

DuPont relies upon the discretionary nature of prejudgment interest awards in ERISA matters, contending that neither disgorgement nor prejudgment interest should be awarded because any delay in paying INCAP benefits was not wrongful and its defense of Skretvedt's claim was appropriate. DuPont contends that imposing interest, especially the amounts Skretvedt proposes, would be inequitable. In support of its argument, DuPont reasons that it followed the ERISA rules and regulations and simply defended itself in the action.

**\*4** Prejudgment interest can be awarded as part of the benefits award for an ERISA plaintiff who is successful under § 502(a)(1)(B). This amounts to interest on a judgment obtained pursuant to a federal statute. Prejudgment interest is ordinarily granted unless exceptional or unusual circumstances exist making such an award inequitable.[FN21]The granting of prejudgment interest, its rate or amount and the time period involved, however, is within the court's discretion, tempered by fairness and equity.[FN22]Prejudgment interest is awarded when the amount of underlying liability is reasonably ascertainable and the relief granted would otherwise fall short of making the claimant whole because the use of the money which was legally due has been denied to the claimant. A prejudgment interest award is intended to serve two purposes: (1) compensate prevailing parties; and (2) promote settlement and deter attempts by the defendant to benefit from stalling litigation.[FN23]

> FN21.*See Anthius v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1010 (3d Cir.1992) ("Thus prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable.").

> FN22.*See Skretvedt II,* 372 F.3d at 205-06 ("[I]n the absence of an explicit statutory commend otherwise, district courts have broad discretion in response to awarding prejudgment interest on a judgment obtained pursuant to a federal statute" and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"prejudgement 'interest is to be given in considerations of fairness [and] denied when its extraction would be inequitable." ' (quoting *Anthius*, 971 F.2d at 1009) (second alteration in original)).

FN23.*See Anthlus*, 971 F.2d at 1010 (noting that prejudgment interest award promotes settlement and eliminates unjust enrichment from inherent delays in litigation).

For the reasons explained below, the court finds that DuPont has not provided a sufficient basis for denying Skretvedt prejudgment interest on INCAP benefits because, its arguments ignore the purposes of a prejudgment interest award.

DuPont retained the INCAP benefits, preventing Skretvedt from using the money as he wished. Moreover, the underlying liability of DuPont for those retained benefits is calculable.[FN24]Therefore, awarding prejudgment interest would fairly compensate Skretvedt.

FN24.*Id.*

The Third Circuit, in its decision to award INCAP benefits to Skretvedt, found that DuPont's denial of benefits was arbitrary and capricious. The Third Circuit took a precedential step, directly awarding INCAP benefits, rather than referring the application to DuPont for reconsideration. DuPont's sole argument against an award of prejudgment interest is that "DuPont has been simply defending its position that Skretvedt was not entitled to benefits under the Plan."[FN25]That defense, determined to be "without reason," leads to the conclusion that DuPont breached its fiduciary duty by wrongfully retaining such benefits. The Third Circuit held that "[b]ecause the medical evidence that Skretvedt presented made it clear that he meets the eligibility standards for incapability benefits, and the Board can point to *no* conflicting medical evidence ... the Board's decision was arbitrary and capricious because it was 'without reason' and it was

'unsupported by substantial evidence." ' [FN26]

FN25. D.I. 207 at 7 (DuPont Supplemental Answering Brief).

FN26.*Skretvedt I,* 268 F.3d at 184 (emphasis added).

DuPont's argument that the court should deny interest also contradicts its own internal policy. DuPont's INCAP Plan provides for paying interest to Plan participants whose benefits have been delayed through no fault of the participant.[FN27]Despite DuPont's request that the court not award prejudgment interest, DuPont acknowledges its responsibility to pay interest on unpaid benefits when the Plan participant is not at fault. DuPont has presented no evidence that Skretvedt was at fault for the delay in receiving INCAP benefits. The assertion that Skretvedt is at fault for DuPont's acting "without reason" in denying those benefits is misplaced.

FN27.*See* D.I. 207 at 9.

**\*5** The Third Circuit concluded that "the ERISA Plans that withheld Skretvedt's benefits for several years and profited with respect to the withholding of those benefits ... belong in good conscience to him."[FN28]Thus, prejudgment interest on Skretvedt's INCAP benefits should be awarded because: (1) DuPont's own Plan pays interest when delays in benefit payments are not the fault of the participant; and (2) Skretvedt, as the prevailing party, should be compensated for the cost of money damages incurred to make him whole. Therefore, the court determines that Skretvedt is entitled to prejudgment interest on his INCAP benefits.

FN28.*Skretvedt II,* 372 F.3d at 214.

*2. Prejudgment Interest Applies Starting on the Date Funds Began to be Wrongfully Withheld*

Skretvedt argues that prejudgment interest on his INCAP benefits should begin to run from the day following his termination by DuPont, that is, Febru-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 6
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

ary 8, 1995. DuPont counters that since Skretvedt did not file suit for denial of disability benefits until February 4, 1998, prejudgment interest should begin as of that date. Alternatively, DuPont argues that another reasonable starting date for prejudgment interest is May 23, 1996, the date when the Board denied his application for INCAP and T & P benefits. Finally, DuPont contends that the earliest date for calculating prejudgment interest is October 1, 1995, the date when he first applied for disability benefits. In support of its various prejudgment interest start dates, DuPont alleges that Skretvedt was solely responsible for any delay.[FN29] As a consequence, DuPont contends any delay period should be excluded from any prejudgment interest award,[FN30] since "one of the reasons for denying an equitable remedy is delay by the claimant,"[FN31] particularly where an ERISA claimant is "less than diligent in pursuing his claim for benefits."[FN32] DuPont argues that Skretvedt's calculations improperly assume that interest runs from the date of his termination.[FN33] DuPont maintains that having to pay interest for that time period would constitute "inequitable treatment."[FN34] Because of Skretvedt's purported delay in bringing suit, DuPont concludes that the proper time period for calculating interest begins February 4, 1998, the date suit was filed, and ends December 13, 2001, the date the court entered judgment on plaintiff's behalf

> FN29. That is, the three year delay from his termination date to the filing of the lawsuit, the 21 month delay from the denial of benefits to the initiation of this action and the 28 month delay between the filing date for benefits and this matter.

> FN30. *See Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 206-07 (2d Cir.1980) (noting court's broad discretion to fix starting date to calculate prejudgment interest).

> FN31. *Fotta v. Trustees of the United Mine Workers*, 319 F.3d 612, 618 (3d Cir.2003) (*Fotta II*).

> FN32. *Hardtke v. Exide Corp.*, 821 F.Supp. 1021, 1031 (E.D.Pa.1993).

> FN33. DuPont's argument, in part, relies on Skretvedt's delay in prosecuting his IN-CAP claim at the administrative level.

> FN34. In further support of its position that fault lies solely with Skretvedt, DuPont argues that Skretvedt had retained counsel and could have filed suit at any time. *See* D.I. 207 at 4. This argument, however, ignores and is inconsistent with the lack of jurisdiction defense for failure to exhaust administrative remedies which DuPont affirmatively raised in this matter.

The Third Circuit found that INCAP benefits were awarded under § 502(a)(1)(B) through a court judgment. As a result, prejudgment interest on such an award is interest on a judgment pursuant to a federal statute which falls within the purview of the court's discretion. Skretvedt first applied for both INCAP and T & P benefits in October 1995. Skretvedt is not primarily responsible for the three year delay in filing this action because ERISA requires Plan participants to first seek resolution through administrative remedies before a lawsuit may be filed. Skretvedt complied with the ERISA requirements for administrative review. DuPont took the position that Skretvedt prematurely filed his lawsuit in February 1998, and as a result, this matter was temporarily stayed to allow DuPont to complete the appeal review, which finally occurred in October 1998. Tellingly, is DuPont's series of letters beginning in January 2002 dealing with the retroactive payment of INCAP and T & P benefits. In a series of four letters ending on April 16, 2002, DuPont finally determined that the correct start date for both types of benefits to be February 8, 1995.[FN35] Therefore, February 8, 1995 is the appropriate start date from which to calculate prejudgment interest.

> FN35 *See* D.I. 206 at A52-A59.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                        Page 7
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

*3. Calculation of Prejudgment Interest Rates on Withheld INCAP Benefits*

**\*6** Skretvedt argues that DuPont's ratio of earnings (e.g., income) to beginning of the year investment should guide the court's prejudgment interest award because this figure represents DuPont's annual return on investment. Skretvedt contends that, under a constructive trust analysis, he is due full disgorgement of the monetary benefit to DuPont for the retention of INCAP benefits from the date of his termination, February 8, 1995, until the date of payment, March 6, 2002. Skretvedt asserts that DuPont benefitted from the retained funds, which generated additional growth to the Plan trust fund by increasing the total assets available for earnings appreciation. As a result, Skretvedt maintains that the prejudgment interest rate should correlate to the percentage of growth in the value of Plan assets on an annual basis from 1995 to early 2002.[FN36] Skretvedt's disgorgement argument is based on the gains DuPont allegedly received as a result of wrongfully withheld assets in the pension trust fund.[FN37]

> FN36. In support of his argument, Skretvedt relies on the Third Circuit's exhaustive discussion in *Skretvedt II* directed to its analysis of recovery of "interest" on *delayed T & P benefits, § 502(a)(3)(B) and the application of a constructive trust,* which did not deal with "prejudgment interest" on INCAP benefits. *See Skretvedt II,* 372 F.3d at 208-15.

> FN37. Plaintiff makes the same disgorgement argument regarding T & P benefits. Unlike INCAP benefits, T & P benefits are held in DuPont's cash accounts to fund business unit activities, which, according to Skretvedt, remained in those commercial accounts to obtain certain returns on investment.

In determining the disgorgement amount, Skretvedt uses the percentage of growth for each year from 1995 to 2002 which averages to a 12.95% annualized rate of return.[FN38] Skretvedt argues that this rate should apply to the seven year period to disgorge DuPont of its improper profits and make him whole. According to Skretvedt, by using that rate, the value of the earnings appreciation or disgorgement amount is $93,633.[FN39] Skretvedt references a timeline to support his argument that both prejudgment and postjudgment interest should be awarded, which outlines the events and delays in this matter. Skretvedt contends that he was not dilatory in prosecuting his claims and, therefore, is entitled to the interest awards (prejudgment interest on INCAP and interest on T & P) demanded.

> FN38. *See* D.I. 206 at A4-A19, specifically at A5.

> FN39. *See id.* at A12. Skretvedt's proposed interest rate of 12.95% is a slight modification of his position in his original briefs on the issue.

DuPont responds that Skretvedt's entire analysis of disgorgement or application of a constructive trust for delayed INCAP benefits is unsupported and contrary to *Skretvedt II.*[FN40] As noted by DuPont, *Skretvedt II* clearly found that prejudgment interest on INCAP benefits was through a judgment obtained pursuant to a federal statute.[FN41] As a result, DuPont initially discusses the rate for postjudgment interest under 28 U.S.C. § 1961. Under that statute, prejudgment interest would be calculated at a fixed rate of 2.17%, which is the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment on December 13, 2001.[FN42] Pursuant to that analysis, compounded annually from February 4, 1998 to December 13, 2001, the amount of prejudgment interest would be $4,517.56. A start date of October 1, 1995 would increase the amount to $10,903.49.[FN43]

> FN40. DuPont's primary argument is that Skretvedt is not entitled to prejudgment interest for the reasons previously noted herein.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

FN41.*See Skretvedt II,* 372 F.3d at 205.

FN42.*See*28 U.S.C. § 1961(a).

FN43.*See* D.I. 207 at 5 & Ex.A-1, A-2.

DuPont's emphasis, however, is that if prejudgment interest is awarded, the Plan's formula for calculating interest should control rather than the rate proposed by Skretvedt. According to DuPont, and unrefuted by Skretvedt, the formula of the Pension Plan for calculating interest paid to Plan participants whose benefits are delayed absent their fault is a simple interest rate of 120% of the Federal Reserve midterm rate as of January in the year in which the delay occurred.[FN44]That policy insures market interest while not exposing the participant to a loss, which could occur if the Plan applied its investment performance. Since an overriding principle under ERISA is the nondiscriminatory treatment of Plan participants, this factor, DuPont contends, supports applying the Plan's interest rate. Using the rates proposed by DuPont, the prejudgment interest on INCAP benefits beginning on February 4, 1998 to December 13, 2001 is $5,521.69. If prejudgment interest is calculated from October 1, 1995, then amount is $9,220.85.[FN45]

> FN44. 120% of the Federal Reserve midterm rate was 9.54% in 1995, 5 .89% in 1996, 7.34% in 1997, 7.13% in 1998, 5.59% in 1999, 7.47% in 2000 and 6.75% in 2001. *See* D.I. 196 at 10, Ex. A; D.I. 199; D.I. 207, Ex. B which contain the Rev. Rul. Tables for the years 1995 through 2001.

> FN45.*See* D.I. 207, Ex. C-1, C-2.

*7 DuPont contends that Skretvedt's entire approach is flawed, because it, not only, confuses the Third Circuit's analysis of his interest claim for T & P benefits with the calculation of prejudgment interest for INCAP benefits, it also applies faulty logic in determining DuPont's return of investment. As Dupont notes, Skretvedt's analysis assumes that the ratio of earnings to beginning of the year investment shows DuPont's return on investment for the year. According to DuPont, Skretvedt's method is inaccurate because the change in asset values is not a true measure of how *his* assets actually performed and a Plan participant is at risk to lose income if there is a net loss. As a result, under Skretvedt's analysis, only the benefits from the expertise of the Plan's's investment advisors and not the risks, would inure to him.

DuPont contends that an individual would not obtain the same investment performance rate as the Pension Plan over the relevant time period and to apply such a rate is a highly speculative assumption: It presumes that Skretvedt would have made like commitment of his benefits in high yield, high risk investments, but eliminates any risk.[FN46]As DuPont observes, Skretvedt's analysis rewards him for risks that he did not incur. Moreover, according to DuPont, any rate of return "in excess of the risk-free yield on Treasury Bills ... would be the result of the Plan's investment expertise and labor, as well as additional risk that the Plan, [and] not what [Skretvedt] bore."[FN47]As result, DuPont argues that the proper rate is a fixed income rate which provides a market rate of return without exposure to market risk.

> FN46.*See Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F .3d 124, 132-33 (3d Cir.2000).

> FN47.*Id.* at 132.

Skretvedt's entire argument regarding the application of disgorgement or a constructive trust to IN-CAP benefits completely blurs the Third Circuit's analysis of prejudgment and postjudgment interest and restitutionary recovery. As noted by that court in *Skretvedt II,* his request for prejudgment interest under § 502(a)(1)(B) on INCAP benefits is "no more than an ordinary request for prejudgment interest on a judgment obtained pursuant to a federal statute."[FN48]No where in that opinion does the court suggest that its constructive trust/restitution

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

analysis applies to prejudgment interest on INCAP. Contrary to Skretvedt's arguments, the Third Circuit took great pains to distinguish between "prejudgment interest" and "interest," and the differences between § 502(a)(1)(B) and § 502(a)(3)(B) and the recoveries thereunder.[FN49] As noted by that court, a claim under § 502(a)(3)(B) "was one cast in 'restitution-the traditional remedy for unjust enrichment' since the statute allows for other "appropriate equitable relief." Under that statute, equitable relief is construed by reference to relief available in equity. Because the constructive trust remedy is a form of equitable restitution, which allows the trust to "be placed over 'interest' actually earned by a plan that has wrongfully delayed paying benefits," the Third Circuit directed its attention to that form of relief solely in its discussion on Skredvedt's claim for "interest" on delayed T & P benefits.[FN50] Of note, in its directions on remand, the Third Circuit commented:

> FN48. *Skretvedt II,* 372 F.3d at 205.

> FN49. *Id.* at 208, n.21; 208-210.

> FN50. *Id.* at 208-15.

**\*8** Of course, to the extent that Skredvedt seeks prejudgment interest on his incapability benefits, which were awarded by court judgment pursuant to § 502(a)(1)(B), wrongful withholding or wrongful delay *is not per se relevant,* as prejudgment interest in that context *derives from* § 502(a)(1)(B) and the *District Court's exercise of discretion* in awarding interest.[FN51]

> FN51. *Id.* at 215, n.29 (emphasis added).

DuPont's Plan establishes a consistent and uniform method regarding interest payments to Plan participants whose benefits are delayed through no fault of the participant. The Plan pays interest on the delayed benefit payments using a simple interest rate equal to 120% of the federal mid-term rate as of January of the year in which the delay occurred and benefits should have been paid. Skretvedt as-

sumes, without any support, that he would have had the same return on investment as the Plan, that is, he would have taken the same risks and would have made the same investments.[FN52] He also assumes that he would have never consumed or used, throughout the entire period, the monthly INCAP income for his support.[FN53] Further, without any explanation, analyses or bases (accounting, economic or otherwise), to calculate DuPont's alleged "return," Skredvedt compares two numbers, the *total income* earned by the Plan (before any reduction for expenses) during the year in question and the *net value* of the Plan assets as of January 1 of that year and ignores the *net increase* after expenses and liabilities, which is an "apples and oranges" comparison. Even if the court were inclined to apply a constructive trust to INCAP benefits (which it clearly is not), under that analysis, it is the *benefit* or *gein received* on the withheld funds under a restitutionary theory.[FN54]

> FN52. Since the original briefing where it appeared that Skredvedt's numbers were plucked from thin air, in his supplemental appendix, he submits the two paragraph report of Gall Harris, a paraprofessional. Her report provides no bases or analyses, just the conclusion that the math (primarily for compounding interest) was done correctly. Otherwise, the report contains no support for Skredvedt's suppositions and conclusions. The court has no idea who Ms. Harris is, although it assumes from the letterhead that she is in the employ of Charles B. Tuck, Jr. P.C. (whomever he is). Further, the court does not know the profession of either Mr. Tuck or Ms. Harris. All the court understands from Skredvedt's appendix is that Ms. Harris is a paraprofessional, which is defined as "a trained worker who is not a member of a given profession but assists a professional ."*The American Heritage Dictionary of the English Language,* Fourth Ed., 2000. Moreover, to calculate prejudgment in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

terest, Ms. Harris uses a "start date [of] 2/08/95. End date 2/06/02," which includes time *after* entry of the December 13, 2001 judgment. *See* D.I. 206, A-12. The time period after that order relates to postjudgment, not prejudgment, interest.

FN53. In other words, Skredvedt's argument assumes that he would have invested every penny of his INCAP monthly income and that it would have cost him nothing to obtain, on average, a 12.95% rate of return.

FN54 *See Skretvedt II,* 372 F.3d at 214.

Moreover, Skretvedt's interest rate calculations for 2000 in the amount of .46% and for 2001 in the amount of 2.2% are a completely mystery. In those years, the Plan experienced a decrease (or loss) in its net assets.[FN55]To the extent his supplemental briefing relates to his argument in his original briefs on that issue, Skretvedt offers no evidence of any mismanagement or improper investment strategies by DuPont in its handling of the Plan.FN56

FN55.*See* D.I. 206, Ex. A-11; D.I. 207, Ex. E. Again, Skredvedt compares the total income earned by the Plan with its value as of January 1. The court has no idea how the 2.2% increase for 2001 was calculated, particularly since the Plan, not only, experienced a decrease in its net assets, but also, a total income loss of $373,079,219. That amount was listed as a positive number in Skretvedt's Ex. A-5 in D.I. 206.

FN56. Skretvedt appears to suggest that, under *Skretvedt II,* prejudgment interest at the standard rate may be awarded when accounts are mismanaged. Without commenting on whether *Skredvedt II* stands for that proposition, no proof whatsoever has been provided by Skredvedt of any mismanagement by DuPont when a minimal increase or loss in the fund occurred.

Skretvedt's approach on prejudgment interest is pure speculation,[FN57] and his tortured calculations demonstrate an unwillingness to accept the risks associated with higher risk investments. He asks the court just to assume that he would have invested all INCAP income in similar investments as DuPont. Further, Skretvedt's argument is contrary to the non-discriminatory principles of ERISA because the compensation he seeks is substantially greater than amounts received by other participants for delayed payments.

FN57.*See Holmes,* 213 F.3d at 132-33 (which found, when affirming the lower court's opinion, "[i]t would be 'highly speculative' to simply assume that [participants] would have invested their benefits in higher-risk, higher-yield securities, and that to so assume would be to reward them for risks they did not take") (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.,* C.A. No. 98-CV-1241, 1999 U.S. Dist. LEXIS 4613, *7 (E.D.Pa. March 24, 1999)).

DuPont's figures are more accurate. They afford a rate of return that is 20% above the Federal Reserve rate without exposure to a potential loss based upon the performance of a particular investment or the trust fund. By using 120% of the federal mid-term rate for the years in which payments were due, Skretvedt obtains a positive return without any risk. Further, such interest rates put Skretvedt on an equal footing with other Plan beneficiaries whose payments were also delayed. As a result, fairness and equity are both achieved.

**\*9** Prejudgment interest, therefore, is calculated from February 8, 1995 through December 13, 2001 when judgment on INCAP benefits was entered. Applying DuPont's simple interest rate of 120% of the federal mid-term rate for the full years (1996 through 2000) and partial years (1995 and 2001) to the annual INCAP benefit of $21,300, results in prejudgment interest of $10,570.22.[FN58]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 11
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

FN58. There are 326 days between February 8 and December 31, 1995 which equates to approximately 89.3% of the year. To calculate the amount of simple interest for that percentage of a year, the court multiplied 89.3% with $23,100 ($1,775 INCAP monthly benefit times 12 months) x 9.84% (120% of the federal mid-term rate for 1995) which equals $1,871.91 simple interest for 1995. That amount of interest was added to the calculations found at D.I. 207, Ex. C-2 (after confirming the accuracy of those calculations) by substituting the $1,871.91 for $522.54 (DuPont's calculation for interest based on a start date of October 1, 1995). The increase from the calculations propounded by DuPont represents the additional interest between February 8 and October 1, 1995.

**B. Interest on T & P Benefits**

*1. Criteria for Awarding T & P Disability*

Skretvedt asserts a claim for interest under disgorgement or constructive trust theories pursuant to § 502(a)(3)(B) for the delayed payment of T & P benefits. DuPont argues that Skretvedt must establish that the T & P benefits were wrongfully withheld or delayed by demonstrating arbitrary and capricious conduct. DuPont also points out that, based on the Plan's eligibility standards, it could not address Skredvedt's claims for T & P benefits until a final determination was made on his application for INCAP benefits.

Two different long-term disability benefits are provided in DuPont's pension Plan:
An employee is eligible for incapability benefits if he is 'permanently incapable of *performing the duties of his position with the degree of efficiency required* by the Company....' Under its separate T & P benefits Plan, ... additional benefits [are provided] to individuals who are 'disabled ... and presumably will be *totally and permanently preven-*

*ted from pursuing any gainful occupation.* 'FN59

FN59.*Skretvedt I,* 268 F.3d at 171 (emphasis added).

As evidenced by the standards of the Plan, a participant cannot qualify for T & P benefits if he does not qualify for INCAP benefits; however, a participant may qualify for INCAP benefits, and not for T & P benefits.FN60 To qualify for T & P benefits, a participant must show that he is totally and permanently prevent from pursing *any* gainful employment. Thus, an award of INCAP does not automatically mean a participant is entitled to T & P benefits.

FN60.*See id.* at 185.Because of the relationship between INCAP (own occupation standard) and T & P (any occupation standard), if INCAP benefits are not awarded, then neither can T & P benefits be granted.

In *Skredvedt I,* the Third Circuit only found that the denial of INCAP benefits was arbitrary and capricious because there was no conflicting evidence, FN61 and on that basis reversed the granting of summary judgment for DuPont on those benefits. The court, however, vacated the granting of summary judgment in favor of DuPont on T & P benefits and *remanded* the matter to the this court with the "assumption" that it would direct DuPont to consider that claim in the *first* instance. The Third Circuit specifically noted that although "Skredvedt is incapable of performing the duties of his previous position at DuPont, he may nevertheless be ineligible for T & P benefits."FN62In neither *Skredvedt I* nor *Skretvedt II* did the Third Circuit find DuPont's denial of T & P benefits as arbitrary and capricious and, therefore, wrongful. After remand, and the entry of the December 13, 2001 order, DuPont paid both INCAP and T & P benefits.

FN61.*See id.*

FN62.*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 12
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

In any analysis to determine whether delayed payment of benefits is wrongful, the court analyzes the facts and evidence to determine whether the failure to pay was arbitrary and capricious. In the present matter, the court will review the evidence and facts that were before the Board during the appeal process in 1998.

**\*10** In addition to the medical information submitted with his initial application for benefits,[FN63] Skretvedt submitted on his administrative appeal: two letters from Dr. Richard B. Zonderman, a clinical psychologist who in March 1997 performed a clinical interview and two types of standard psychological tests; updated letters from Drs. Graenum Schiff (April 1997 and July 1998) and Harold Binhammer (May 1997); and a letter from the Social Security Administration denying his claim for disability insurance benefits.[FN64]

> FN63. With his initial application, Skredvedt submitted several letters, records and reports from various physicians and clinical psychologist. Those records, which covered the time frame of 1994 through October 1995, showed improvement in Skredvedt's condition after his termination from DuPont as an environmental engineer and after medication (antidepressant drugs) was prescribed. His treating health care providers concluded that he could not return to his former position or job assignment "because of the anxiety precipatated [sic] ... by this type of work."*Skredvedt I,* 268 F.3d at 171-73. None of those reports concluded that Skredevedt was totally and permanently prevented from pursuing *any* gainful employment.

> FN64.*Skredvedt I,* 268 F.3d at 179.

Dr. Zonderman's first letter describes the clinical interview and two standardized psychological tests. According to Dr. Zonderman, Skretvedt was suffering from a "prominent anxiety disorder," and as a result " '[r]eturn to a job resembling the environ-

mental engineering position which caused [Skretvedt's] problems would most likely precipitate post traumatic stress like symptoms.' "[FN65]In his second letter, dated July 29, 1998, Dr. Zonderman opined that Skretvedt's emotional problems had been caused by his job with DuPont, that he was still in therapy in July 1998 with two different doctors, and that "he cannot return to a similar work environment..."[FN66]

> FN65.*Id.* at 179-80.

> FN66.*Id.*

The first letter from Dr. Schiff, dated May 9, 1997, concurred with Skretvedt's other treating professionals finding that "Skretvedt would never be able to return to his position at DuPont."[FN67]Dr. Schiff related that "when Skretvedt attempted to return to a job in his old field of industrial hygiene (i.e., his job as a compliance inspector at the Virginia Department of Labor) 'his symptoms returned and his condition deteriorated.'"[FN68]Dr. Schiff's second letter, dated July 28, 1998, updated his previous letter regarding Skretvedt's condition.[FN69]Thereafter, on August 17, 1998, Dr. Schiff recommended a two-month medical leave of absence. He did not conclude that Skretvedt was permanently unable to return to any gainful employment.[FN70]

> FN67.*Id.*

> FN68.*Id.*

> FN69.*See id.*

> FN70.*See id.*

According to Dr. Binhammer in his report dated May 9, 1997:
[D]uring the time that Skretvedt worked as a furniture refinisher, [the post-traumatic] episodes were less frequent because of the change of job environment, but that when Skretvedt attempted to return to his old field, the symptoms returned and 'escalated.' [FN71]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

FN71.*Id.*

Finally, Skretvedt submitted the letter from the Social Security Administration denying his claim for disability insurance benefits. As discussed previously herein, although the SSA found that Skretvedt was permanently unable to perform his previous job at DuPont or similar employment, it concluded that he was ineligible for disability insurance benefits because he was able to perform other work.[FN72]

FN72.*See id.*

*2. Skretvedt is Not Entitled to interest on T & P Benefits*

The Third Circuit remanded the issue whether, under *Fotta v. Trustees of the United Mine Workers,*[FN73] Skretvedt is entitled to interest on his delayed T & P benefits.[FN74]*Fotta II* recognizes that an ERISA beneficiary is "presumptively entitled," pursuant to § 502(a)(3)(B) "to interest on his delayed benefits *only if* those benefits were wrongfully withheld or wrongfully delayed, that is, only if they were withheld or delayed in violation of ERISA or an ERISA plan."[FN75]Skretvedt is not entitled to interest on his T & P benefits because he fails to demonstrate that DuPont wrongfully withheld or delayed paying his T & P benefits.

FN73.319 F.3d 612 (3d Cir.2003) ("*Fotta II*").

FN74.*See Skretvedt II,* 372 F.3d at 215.

FN75.*Fotta II,* 319 F.3d at 617 (emphasis added).

**\*11** In *Fotta II,* the Third Circuit noted that a plaintiff seeking interest on the delayed payment of benefits pursuant to § 502(a)(3)(B) "must meet a high standard" and "eligibility determinations are wrongful only if they are arbitrary and capricious."[FN76]The record in the present matter does not support such a finding. When the Third Circuit instructed this court to enter judgment in fa-

vor of Skretvedt on INCAP benefits, DuPont re-assessed Skretvedt's T & P claims in light of the Third Circuit's findings on INCAP and voluntarily paid T & P benefits.[FN77]Skretvedt was not required to proceed with further judicial proceedings to obtain those benefits.[FN78]Moreover, as noted by the Third Circuit, Skretvedt "represented to the Magistrate Judge that DuPont had paid those benefits," and never argued "that DuPont in any way failed to award T & P benefits or miscalculated the award of T & P benefits."[FN79]Thus, Skretvedt did not previously suggest that DuPont wrongfully withheld or improperly delayed payment of his T & P benefits.

FN76.*Id.*

FN77. At the time T & P benefits were not awarded, the Board had found that Skretvedt did not qualify for INCAP benefits. Under those circumstances, as discussed previously herein, the Board could not award T & P benefits.

FN78.*See Skretvedt II,* 373 F.3d at 198.

FN79.*Id.* at 201.

Skredvedt appears to argue that because no additional medical evidence was provided or required before DuPont paid T & P benefits, that sole fact proves that its previous failure to pay T & P was arbitrary and capricious. The medical and psychological reports and testing submitted, however, only show that "[a]ll of [his] physicians and psychologists concluded that Skretvedt was unable to return to his previous job at DuPont."[FN80]The Explanation and Determination from the Social Security Administration came to the same conclusion, "that Skretvedt's 'condition prevents [him] from doing the type of work that [he] has done in the past.' " FN81 Moreover, the SSA specifically found that Skredvedt did not qualify for disability benefits because his condition " 'does not prevent [him] from doing less demanding work that does not require extensive public contact.' " [FN82]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                   Page 14
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

FN80.*Skredvedt I,* 268 F.3d at 172.

FN81.*Id.*

FN82.*Id.* at 172-73.

Between February 1995 and October 1998, Skretvedt held two different jobs. In 1995, he started a furniture repair and refinishing business, which earned a modest profit in 1995, but lost money in 1996. There is no evidence that that employment ended because of his disability.[FN83] In May 1996, Skretvedt began working for the Virginia Department of Labor as a compliance inspector.[FN84] The position involved a two-year training period, during which his job responsibilities gradually increased. Skretvedt's work-related anxiety and depression increased in 1998 as his training period ended." [FN85] After Skredvedt completed the training and began the full responsibilities of a compliance officer, his condition worsened. Dr. Schiff recommended a two-month medical leave of absence. Skretvedt eventually resigned from his position at the Virginia Department of Labor.[FN86]

> FN83. Skredvedt apparently stopped the repair and refinishing business for financial reasons, which are irrelevant as to whether he qualifies for T & P benefits or whether there has been a violation of ERISA.

> FN84. As noted previously herein, the compliance inspector position was very similar to the position Skredvedt held with DuPont.

> FN85.*Skredvedt I,* 268 F.3d at 173.

> FN86.*See id.*

Unlike the absence of conflicting medical evidence to qualify for INCAP benefits noted in *Skredvedt I,* there is ample evidence that Skredvedt was and is not totally and permanently disabled from employment, and therefore, may not qualify for T & P be-

nefits. Except for a recommended two-month leave of absence by Dr. Schiff from his employment with the Virginia Department of Labor (at a position very similar to his prior work at DuPont) and the fact that Skredvedt subsequently resigned from that position, the medical and psychological evidence primarily focuses on his inability to return to the type of job that he did with DuPont. Further, Skredvedt successfully completed his training period with the Virginia Department of Labor; he was able to start, manage and operate his own business for over a year; and the social security determination concluded that he could do less demanding work than his prior employment with DuPont. Therefore, the failure to award T & P benefits was not arbitrary and capricious. As a result, the delayed payment of T & P benefits was not wrongful.

**\*12** Skredvedt suggests that DuPont awarded T & P benefits in 2002 on the same medical evidence on which it had initially denied disability benefits in 1996. Skredvedt is wrong as evidenced by the discussion herein of *Skredvedt I.* Additional evidence *was* submitted to the Board in 1998.

Skredvedt suggests that "any job" is defined as paying more than 60% of his current salary and appears to reference Dr. Schiff's comments in support of this argument. As has continuously occurred in his briefing (which motivated the court to order supplemental briefs and caution the parties to provide supporting *evidence* for their arguments), Skredvedt has again made bald assertions and conclusions or references "statements" (usually out of context) without providing any documentary support. The court has no means to determine their accuracy or relevance. Moreover, his argument ignores the different standards for INCAP and T & P benefits as noted by the Third Circuit. Further, there is no evidence that Dr. Schiff's comments are at all relevant to the Plan documents or standards. There is no evidence that 1) Schiff is a member of the Board or is aware of the Plan language and standards; 2) whether "comparable job" is language from the Plan, defined in the Plan or applicable to INCAP or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T & P; or 3) whether the ability to earn 60% of the DuPont salary is relevant to the determination of either INCAP or T & P.[FN87] In short, the court has no idea from where any such "alleged evidence" came.[FN88]

> FN87. In light of *Skredvedt I,* it appears not to be relevant.

> FN88. The court's use of the word "evidence" is overly generous and does not imply it accepts it as such.

In light of the court's findings that the Board's decision in relation to T & P benefits was not arbitrary and capricious and therefore, not wrongful, the parties' arguments concerning constructive trust, disgorgement or other restitutionary relief under § 502(a)(3)(B) are moot and need not be addressed.

## C. Postjudgment Interest

Skretvedt applies a 10% postjudgment interest rate to the INCAP benefits, based on the rate authorized under 6 *Del. C.* § 2301(a) .[FN89]In support of the application of § 2301(a) to calculate postjudgment interest, Skretvedt relies upon *Gelof v. Papineau* FN90DuPont asserts that it is inappropriate to address postjudgment interest since there has been no money judgment on either INCAP or T & P benefits. Further, DuPont argues that, if any postjudgment interest is awarded, 28 U.S.C. § 1961 controls.

> FN89. Skretvedt's analysis suggests that the Federal Reserve discount rate has remained at 5% since December 13, 2001, but provides no evidence in support. Under § 2301(a), an additional 5% is added to the Federal Reserve discount rate for a broach of a contract that contains no expressed rate. Moreover, the court notes that the Federal Reserve discount rate does not and has not remained static as evidenced by the reliable exhibits provided by DuPont.

FN90.829 F.2d 452, 456-57 (3d Cir.1987). Contrary to Skretvedt's argument, *Gelof* held that postjudgment interest is governed by 28 U.S.C. § 1961, and the appellate court reduced the district court's award of a 17% interest to the statutory rate. Therefore, § 1961 applies to a *federal* judgment, not 6 *Del. C.* § 2301(a) which is a state statute. Moreover, *Skredvedt II* analyzed postjudgment interest under 28 U.S.C. § 1961, and not under state law.

In its conclusion, the Third Circuit directed this court to reconsider whether Skretvedt is entitled to prejudgment interest on INCAP benefits and/or interest on the delayed payment of T & P benefits, "without prejudice to Skretvedt's ability to file a timely motion for postjudgment interest on any resulting award of prejudgment interest (with respect to incapability benefits) or interest (with respect to T & P benefits)."[FN91] Such language and that court's preceding analysis on postjudgment interest under 28 U.S.C. § 1916 indicates that, after a money judgment is entered, this court will then address postjudgment interest on INCAP benefits upon a timely and appropriate motion filed by Skretvedt.

> FN91.*Skretvedt II,* 372 F.3d at 218.

**\*13** The United States Supreme Court has found that postjudgment interest under 28 U.S.C. § 1961"properly runs from the date of the entry of judgment."[FN92]Moreover, the Third Circuit stated in *In re Lower Lake Erie Iron Ore Antitrust Litigation,*[FN93] that § 1961"does not, by its terms, mandate that the judgment from which interest is calculated must be a final judgment. Our view is consistent with the statute's philosophy of providing compensation from a point at which the loss-causing defendant's liability is entered on record."[FN94]While postjudgment interest, however, may accrue on a non-final judgment under *Iron Ore,* the phrase "any money judgment" in § 1961(a)"requires that the judgment at issue award a fixed amount of fees to the prevailing party in or-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 16
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

der to trigger the postjudgment interest period."FN95As noted by the Third Circuit, the judgment entered for INCAP benefits on December 13, 2001 did not constitute a monetary amount.FN96As a result, postjudgment interest under § 1961 could not accrue from that date because no *"money judgment"* had been entered.FN97 In light of this analysis under *Skredvedt II,* an award of postjudgment interest on INCAP benefits is not presently allowed. Moreover, consistent with the Third Circuit's findings in *Skredvedt II,* no postjudgment interest for DuPont's alleged four month delay in paying T & P benefits is recoverable under § 1961.FN98

> FN92.*Kaiser Aluminum & Chem. Corp. v. Bonjomo,* 494 U.S. 827, 835 (1990).

> FN93.998 F.2d 1144 (3d Cir.1993).

> FN94.*Id.* at 1177-78.

> FN95.*Eaves v. County of Cape May,* 239 F.3d 527, 534 (3d Cir.2001).

> FN96.*See Skretvedt II,* 372 F.3d at 217. Before entry of the December 13, 2001 order, neither party provided the court any information regarding the monthly, annual or accrued amounts of INCAP or T & P benefits.

> FN97.*See Fotta II,* 319 F.3d at 618 (Section 1981 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court.").

> FN98. Since there was no judgment for T & P benefits at the time, in *Skredvedt II,* the Third Circuit held that there was "no basis for an award of postjudgment interest under § 1961" on those benefits.*Skredvedt II,* 372 F.3d at 216, n.31. Because of this court's conclusions herein under Part B, there is still no judgment nor any money judgment for T & P benefits. Therefore, no postjudgment interest on T & P benefits

may be awarded.

The Third Circuit provided guidance in *Skredvedt II* regarding how to calculate postjudgment interest. With respect to INCAP benefits, postjudgment interest would be calculated on the underlying judgment and the award of prejudgment interest.FN99Should this court in the future be required to address postjudgment interest for INCAP benefits, it will apply the analysis of *Skredvedt II.*FN100

> FN99.*See id.* at 217 (*quoting Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 63 (3d Cir.1986); *Caffey v. UNUM Life Ins. Co.,* 302 F.3d 576, 586 (8th Cir.2002) ("[P]ostjudgment interest should be awarded on the entire amount of the judgment, including any prejudgment interest.") (noting agreement among the Fourth, Ninth, Tenth and Eleventh Circuit Courts)).

> FN100. Assuming that analysis is not modified and remains good law.

CONCLUSION

After careful review and consideration of the facts related to this matter, the court finds that Skretvedt is entitled to prejudgment interest from February 8, 1995 until December 13, 2001 in the amount of $10,570.22. To the extent that Skredvedt moved for application of a constructive trust on INCAP benefits, his motion is denied. Skredvedt's motion for prejudgment interest and/or the application of a constructive trust on T & P benefits is denied. Further, his motion for postjudgment interest on T & P benefits is denied. Pursuant to 28 U.S.C. § 1916, Skretvedt's motion for postjudgment interest on INCAP benefits is denied, with leave to timely refile.

D.Del.,2006.
Skretvedt v. E.I. Du Pont de Nemours and Co.
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3623705 (D.Del.), 40 Employee Benefits Cas. 1038
**(Cite as: Slip Copy)**

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                        Page 1
Slip Copy, 2008 WL 131701 (C.A.3 (Del.))
**(Cite as: Slip Copy)**

**H**
Skretvedt v. E.I. DuPont de Nemours & Co. Inc.
C.A.3 (Del.),2008.
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,Third Circuit.
Orrin T. SKRETVEDT, Appellant
v.
* EI DuPONT DE NEMOURS & COMPANY INCORPORATED, Plan Adminstrator, a Delaware corporation; Pension and Retirement Plan; Hospital and Medical-Surgical Plan; Dental Assistance Plan; Noncontributory Group Life Insurance Plan, Contributory Group Life Insurance Plan; Total and Permanent Disability Income Plan; Savings and Investment Plan; Tax Reform Act Stock Ownership Plan; Short Term Disability Plan.
* (Amended Per Clerk's Order dated 2/22/07).
No. 07-1081.

Submitted Under Third Circuit LAR 34.1(a) Dec. 14, 2007.
Filed Jan. 15, 2008.

**Background:** Following favorable judgment on appeal, 268 F.3d 167, granting Employee Retirement Income Security Act (ERISA) plan participant incapability benefits, and plan administrator's subsequent payment of both incapability benefits and total and permanent disability benefits, participant filed motion for prejudgment and postjudgment interest. The United States District Court for the District of Delaware, Mary Pat Thynge, United States Magistrate Judge, 2006 WL 3623705, denied motion. Participant appealed.

**Holdings:** The Court of Appeals, Ambro, Circuit Judge, held that:
(1) constructive trust principles did not apply in awarding prejudgment interest;
(2) participant was entitled to recover prejudgment in-

terest that accrued for each year that incapability benefits remained unpaid; and
(3) ERISA plan participant was not entitled to interest on the delayed payment of total and permanent disability benefits.

Affirmed in part, and reversed in part.

**[1] Interest 219 ⟺39(2.40)**

219 Interest
  219III Time and Computation
    219k39 Time from Which Interest Runs in General
      219k39(2.5) Prejudgment Interest in General
        219k39(2.40) k. Labor Relations and Employment. Most Cited Cases
Constructive trust principles did not apply in awarding prejudgment interest on ERISA plan participant's incapability benefits award, where participant prevailed in seeking an award of benefits, allowing him to request prejudgment interest as part of the award. Employee Retirement Income Security Act of 1974, §§ 502(a)(1)(B), 502(a)(3)(B), 29 U.S.C.A. §§ 1132(a)(1)(B), 1132(a)(3)(B).

**[2] Interest 219 ⟺39(2.40)**

219 Interest
  219III Time and Computation
    219k39 Time from Which Interest Runs in General
      219k39(2.5) Prejudgment Interest in General
        219k39(2.40) k. Labor Relations and Employment. Most Cited Cases
ERISA plan participant who prevailed in claim for incapability benefits was entitled to recover prejudgment interest that accrued for each year that such benefits remained unpaid. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

**[3] Labor and Employment 231H ⟺563(4)**

231H Labor and Employment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 131701 (C.A.3 (Del.))
**(Cite as: Slip Copy)**

Page 2

231HVII Pension and Benefit Plans
231HVII(H) Coverage and Benefits of Particular Types of Plans
231Hk557 Pension and Retirement Plans
231Hk563 Amount of Benefit and Form of Distribution
231Hk563(4) k. Interest. Most Cited Cases

ERISA plan participant was not entitled to interest on the delayed payment of total and permanent disability benefits, where the plan administrator awarded the disability benefits voluntarily after participant obtained favorable judgment for incapability benefits. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

Appeal from the United States District Court for the District of Delaware, (D.C. Civil Action No. 98-cv-00061), Magistrate Judge: Honorable Mary Pat Thynge.

John M. Stull, Wilmington, DE, pro se.

Raymond M. Ripple, Donna L. Goodman, E.I. Dupont De Nemours & Company Legal Department, Wilmington, DE, for Appellees.

Before SLOVITER and AMBRO, Circuit Judges, POLLAK,[FN*] District Judge.

OPINION

AMBRO, Circuit Judge.

*1 Orrin Skretvedt appeals a District Court decision regarding interest on the delayed payment of disability benefits. We affirm in part and reverse in part.

I

We recite the facts briefly because we write primarily for the parties. Skretvedt worked for E.I. DuPont de Nemours and Company from June 1974 until February 1995, whereupon DuPont terminated him. After pursuing an ultimately unsuccessful claim before the Equal Employment Opportunity Commission, Skretvedt applied for disability benefits, which DuPont denied. In 1998, Skretvedt filed a complaint in the United States

District Court for the District of Delaware against DuPont and various associated ERISA plans[FN1] for improper denial of eight types of benefits, as well as prejudgment interest, postjudgment interest, and attorney's fees. The Magistrate Judge granted summary judgment in favor of DuPont on all claims. *Skretvedt v. E.I. DuPont de Nemours & Co.,* 119 F.Supp.2d 444 (D.Del.2000).

Skretvedt appealed that order with respect to two specific benefit plans: the "Incapability Retirement" pension program ("incapability benefits") and the "Total and Permanent Disability Income Plan" ("T & P benefits"). Our Court reversed and remanded the order with respect to the claim for incapability benefits, holding that Skretvedt was eligible. *Skretvedt v. E.I. DuPont de Nemours & Co.,* 268 F.3d 167, 184 (3d Cir.2001) ("*Skretvedt I*"). We also vacated and remanded the order with respect to the claim for T & P benefits so that DuPont could determine Skretvedt's eligibility for that particular category of benefits in the first instance. *Id.* at 185.

Subsequently, in March 2002, DuPont granted incapability benefits as directed by the Magistrate Judge's order after remand. DuPont also granted T & P benefits voluntarily at the same time in light of our Court's opinion in *Skretvedt I.* In April 2002, Skretvedt filed a brief in the District Court pursuing, among other claims, interest on the delayed payment of his benefits. The Magistrate Judge treated the brief as a motion for additional compensation and denied relief on all claims. Skretvedt appealed again to our Court.

We asked the Magistrate Judge to reconsider, in light of the legal principles articulated in our opinion, three categories of interest on the delayed payment of Skretvedt's benefits: "(1) prejudgment interest on the award of incapability benefits; (2) interest on the delayed payment of T & P benefits; and (3) postjudgment interest on both of those awards."*Skretvedt v. E.I. DuPont de Nemours & Co.,* 372 F.3d 193, 218 (3d Cir.2004) ("*Skretvedt II* "). We affirmed the denial of all other claims for additional compensation.

On remand after *Skretvedt II,* the Magistrate Judge

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 131701 (C.A.3 (Del.))
**(Cite as: Slip Copy)**

Page 3

granted Skretvedt $10,570.22 in prejudgment interest with respect to his incapability benefits, denying postjudgment interest on that claim but granting leave to refile. The Court denied interest for the delayed payment of Skretvedt's T & P benefits, however, and accordingly denied his corresponding claim for postjudgment interest. Skretvedt is again before us on appeal.

II

**\*2** Skretvedt argues that the Magistrate Judge should have applied the principles of a constructive trust when calculating the prejudgment interest on his incapability benefits. He contends that, although the judgment awarding incapability benefits came under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),[FN2] any award of prejudgment interest on that claim must come under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B).[FN3]

[1] This argument contradicts our opinion in *Skretvedt II,* which separately analyzed prejudgment interest under § 502(a)(1)(B) (see section V.A of that opinion) and interest for delayed payment without a judgment under § 502(a)(3)(B) (see section V.B. of the opinion). We pointed out that "an ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest *as part of* his or her benefits award."372 F.3d at 208 (emphasis added). We also stated that " 'the awarding of prejudgment interest is committed to the trial court's broad discretion.'"*Id.* (quoting *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 981-82 (3d Cir.1984)). Thus, we affirm

the Magistrate Judge's choice not to apply constructive trust principles in awarding prejudgment interest on the incapability-benefits claim. In particular, we affirm the decision to use the DuPont ERISA plan's formula for calculating interest, which involves applying "a simple interest rate of 120% of the Federal Reserve mid-term rate as of January in the year in which the delay occurred."District Ct.'s Op. 14.

[2] But Skretvedt is correct that the prejudgment-interest calculation did not correctly account for the time value of money. *See* Appellant's Opening Br. 35-36. For example, with respect to the incapability benefits DuPont paid Skretvedt for (but not in) 1995, the interest awarded reflects only the simple interest that accrued in 1995. Yet Skretvedt did not obtain a judgment on his claim for incapability benefits until December 2001. Thus, he should also receive the interest that accrued from 1996 through 2001 on the benefits paid for 1995. Similar logic applies to Skretvedt's incapability benefits for the years 1996 through 2000. We reverse on this narrow arithmetical issue.

Based on the amount of Skretvedt's incapability benefits,[FN4] and using the same interest rates [FN5] and time periods for accruing interest [FN6] as the Magistrate Judge used, the following table displays what we believe to be the correct amounts of simple interest for each year of benefits awarded:

Prejudgment Interest

| Benefits | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|---|---|
| 1995 | *$1,628.47* | $1,316.82 | $1,402.82 | $1,362.69 | $1,068.36 | $1,427.67 | $1,226.44 |
| 1996 | | *$1,467.57* | $1,563.42 | $1,518.69 | $1,190.67 | $1,591.11 | $1,366.85 |
| 1997 | | | *$1,563.42* | $1,518.69 | $1,190.67 | $1,591.11 | $1,366.85 |
| 1998 | | | | *$1,518.69* | $1,190.67 | $1,591.11 | $1,366.85 |
| 1999 | | | | | *$1,190.67* | $1,591.11 | $1,366.85 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 131701 (C.A.3 (Del.))
**(Cite as: Slip Copy)**

| | | |
|---|---|---|
| 2000 | *$1,591.11* | $1,366.85 |
| 2001 | | *$1,366.85* |

**\*3** The previous interest calculation, in effect, included only amounts corresponding to the underlined diagonal entries from this table.[FN7]But this did not appropriately compensate Skretvedt for the time value of his benefits-award money. The correct total is $39,503.05 in prejudgment interest. [FN8]

Once a money judgment has been filed on remand, Skretvedt may move for postjudgment interest with respect to any delay in DuPont's payment of the prejudgment interest. *See Skretvedt II,* 372 F.3d at 217 ("Skretvedt could receive postjudgment interest *on any award of prejudgment interest* under ERISA § 502(a)(1)(B) with respect to incapability benefits."(emphasis added)). But he may not pursue postjudgment interest on the previous, underlying award of incapability benefits.[FN9]

### III

[3] With respect to Skretvedt's claim for interest on the delayed payment of his T & P benefits, we agree with the Magistrate Judge that DuPont did not wrongfully withhold those benefits. DuPont awarded T & P benefits voluntarily after Skretvedt obtained a judgment for incapability benefits as a result of *Skretvedt I.* Under the plan's policy, DuPont could not have awarded T & P benefits without a prior incapability-benefits award. Moreover, the evidence suggests that Skretvedt is not totally and permanently disabled.

Without a judgment for interest on the delayed payment of T & P benefits under § 502(a)(3)(B), the issue of postjudgment interest on that claim is moot.

\* \* \* \* \*

We commend the Magistrate Judge for her thorough opinion, which clearly explained both her legal reasoning and her arithmetical calculations. We also applaud the Magistrate Judge for handling a case like this with such patience and attention to detail, especially since the parties have presented the issues in a disorganized

and haphazard fashion. We remind the parties that, in future proceedings, they must comply with the Magistrate Judge's orders, including her directive to provide the proper documents and pinpointed references to the cited material within those documents. *See* Magistrate Judge's Order ¶¶ 3-4 (December 11, 2006).

For the reasons described above, the decision of the Magistrate Judge is affirmed save with respect to the amount of the award of prejudgment interest on Skretvedt's incapability benefits. On remand, the Magistrate Judge should award $39,503.05 in prejudgment interest and should continue to grant Skretvedt leave to file a motion for postjudgment interest on that prejudgment interest in accordance with *Skretvedt II.*

> FN\* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

> FN1. We refer to the defendant-appellees, *i.e.,* DuPont and the ERISA plans, collectively as "DuPont."

> FN2. The provision allows suits by a plan participant or beneficiary "to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

> FN3. Subsection (a)(3)(B) allows suits "by a participant, beneficiary, or fiduciary"... to obtain ... appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this title or the terms of the plan."

> FN4. DuPont paid Skretvedt incapability benefits of $19,112 in 1995 and $21,300 per year for 1996 through 2001. App. 52.

> FN5. Those interest rates are: 9.54% for 1995, 6.89% for 1996, 7.34% for 1997, 7.13% for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 5
Slip Copy, 2008 WL 131701 (C.A.3 (Del.))
**(Cite as: Slip Copy)**

1998, 5.59% for 1999, 7.47% for 2000, and 6.75% for 2001. Magistrate Judge's Op. 14 n. 44.

FN6. The Magistrate Judge correctly deemed that period to be February 8, 1995 through December 13, 2001. *Id.* at 19.Skretvedt should receive interest for 326 days out of 365 in 1995 and 347 days out of 365 in 2001. *See* Robert F. Meigs & Walter B. Meigs, *Accounting: The Basis for Business Decisions* 316 (8th ed.1990) (stating that, in interest calculations, "[t]he day on which a note is dated is not included; the day on which a note falls due is included" (emphasis omitted)).

FN7. The underlined figure for 1995 of $1,628.47 differs from the $1,871.91 used in the previous interest calculation. *See* Magistrate Judge's Op. at 19 n. 58. Adding $1,871.91 to the underlined figures for 1996 through 2001 ($1,467.57, $1,563.42, $1,518.69, $1,190.67, $1,591.11, and $1,366.85) gives a sum of $10,570.22, the amount awarded by the Magistrate Judge.

Four issues account for the discrepancy in the amount of interest for 1995, which we explain to allow the parties and the Magistrate Judge to retrace our steps. First, the previous calculation used an interest rate of 9.84% for 1995, *see* Magistrate Judge's Op. 19 n. 58, which conflicts with the interest rate of 9.54% specified elsewhere in the opinion, *id.* at 14 n. 44, and in the record, App. 160. Second, the previous calculation uses a *calculated* benefits level for 1995 of approximately 89.3% (representing 326 days out of 365) of $21,300 yearly benefits, which gives a figure of $19,024.11. But the *actual* amount that DuPont awarded Skretvedt for 1995 was $19,112. App. 52. Third, the previous calculation used the time period of 326 days in 1995 to calculate the base level of benefits awarded to Skretvedt, but implicitly used a time period of one full year to calculate the interest. The proper time period *for calculating the interest that accrued in 1995* is also 326 days, not a full year, which further reduces the interest for 1995 compared to the

previous calculation. Fourth, there is a six-cent discrepancy between the $1,871.91 discussed in the opinion and the figure of $1,871.97 that would result from using the preceding figures to calculate the following: $21,300 times 326 divided by 365 times 9.84%.

Making these adjustments, the proper calculation for 1995 is to multiply $19,112 (the base level of benefits for 1995) by 9.54% (the correct interest rate for 1995) by the quotient 326 divided by 365 (the time during which interest accrued during the year 1995). That product gives the figure of $1,628.47 displayed in the table.

FN8. This sum differs by three cents from the sum of the numbers in the table ($39,503.08) because we have rounded the numbers in the table to the nearest penny. The sum of the non-rounded numbers is the proper total of prejudgment interest.

FN9. In *dicta,* the Magistrate Judge suggested to the contrary on this point. Magistrate Judge's Op. 30 & n. 99. Our opinion in *Skretvedt II* referred to " 'the entire amount of the judgment, including any prejudgment interest,' " for the purpose of showing that awarding postjudgment interest on prejudgment interest was permissible. 372 F.3d at 217 (quoting *Caffey v. UNUM Life Ins. Co. .,* 302 F.3d 576, 586 (6th Cir.2002)). But because the underlying award of incapability benefits was not a " '*money* judgment' " with a " 'fixed amount of fees,' " Skretvedt remains "unable to pursue postjudgment interest with respect to DuPont's four month delay in paying incapability benefits" under 28 U.S.C. § 1961. *Id.*

C.A.3 (Del.),2008.
Skretvedt v. E.I. DuPont de Nemours & Co. Inc.
Slip Copy, 2008 WL 131701 (C.A.3 (Del.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.