UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DELSIE E. BROOKENS,

                 Plaintiff,

                                          Case No. 07-387

vs.

                                          Hon. Joseph J. Farnan, Jr.

GENERAL MOTORS CORPORATION,
a Delaware corporation; GENERAL MOTORS
CORPORATION, Plan Administrator, and
GM HOURLY-RATE EMPLOYEES PENSION
PLAN, an employee pension benefit plan,

                     Defendants.

---

<u>DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

David M. Davis (MI Bar No. 24006)
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800
Telecopier: (248) 645-2602


Margaret F. England (Del. Bar No. 4248)
Eckert, Seamans, Cherin & Mellott, LLC
300 Delaware Avenue, Ste. 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Telecopier: (302) 425-0432

Attorneys for Defendants

## TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The GM Pension Plan is an Employee Pension Benefit Plan Governed by the Employee Retirement Income Security Act of 1974, as Amended . . . . . . . . . . . 3

    B.    Plaintiff's Divorce From David Brookens And Relevant Provisions Of The Separation And Property Division Agreement . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    The Separation And Property Division Agreement Entered On April 30, 1990 by the Family Court In New Castle County Does not Constitute A Qualified Domestic Relations Order Under Section 206(d) Of ERISA . . . . . . . . . . . . . . . 10

    II.    Plaintiff's Stand Alone Claim For Interest Should Be Dismissed Because Interest Is Not A "Benefit Due" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.    Assuming Arguendo That Plaintiff Has Pled A Viable Claim, She Is Not Entitled To Interest On Her Delayed Surviving Spouse Benefit Payments . . . . . 14

        A.    GM did not Wrongfully Withhold from Plaintiff the Pre-Retirement Surviving Spouse Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.    Defendants' Decision to Deny the Surviving Spouse Benefits was Neither Arbitrary nor Capricious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.    Plaintiff's Anticipated Reliance on *Skretvedt v. E.I. DuPont de Nemours* is Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    IV.    Plaintiff's Claims Should Be Dismissed Because of Her Failure to Exhaust Available Administrative Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

INDEX OF AUTHORITIES

**Legal Decisions**

Amato v. Bernard,
618 F.2d 559 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Baxter v. C.A. Muer Corp.,
941 F.2d 451 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Clair v. Harris Trust and Savings Bank,
190 F.3d 495, 497 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Drinkwater v. Metropolitan Life Ins. Co.,
846 F.2d 821 (1st Cir.)
cert. denied, 488 U.S. 909 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fotta v. Trustees of the United Mine Workers of America,
319 F.3d 612 (3rd Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Green v. Holland,
480 F.3d 1216 (11th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Harrow v. Prudential Ins. Co.,
279 F.3d 244 (3d Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hawkins-Dunn v. General Motors Corp.,
225 Fed.Appx. 358, 360 (6th Cir.2007) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kross v. Western Electric Co.,
534 F.Supp. 251 (N.D. Ill. 1982)
aff'g on plaintiff's failure to exhaust and rev'g in part on other grounds,
701 F.2d 1238 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lord v. General Motors Corp.,
39 F.3d 1182 (6th Cir. 1994)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Makar v. Health Care Corp. of the Mid-Atlantic,
872 F.2d 80 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mason v. Continental Group, Inc.,
763 F.2d 1219, 1227 (11th Cir. 1985),
cert. denied, 474 U.S. 1087 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

- ii -

Metropolitan Life Ins. Co. v. Price,
501 F.3d 271 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

O'Neil v. O'Neil,
136 F.Supp.2d 690 (E.D.Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Roberson v. General Motors Corporation,
801 F.2d 176 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Samaroo v. Samaroo,
193 F.3d 185 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Scott v. Central States, Southeast and Southwest Pension Plans,
727 F.Supp. 1095 (E.D.Mich.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Skretvedt v. E.I. DuPont de Nemours,
2006 WL 3623705 (D. Del. 2006)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Skretvedt v. E.I. DuPont de Nemours,
2008 WL 131701 (3rd Cir.2008)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Skretvedt v. E.I. DuPont de Nemours,
372 F.3d 193 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sun Life Assur. Co. of Canada v. Sullivan,
206 F.Supp.2d 191 (D.Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United Mine Workers of America v. Helen Mining Co.,
762 F.2d 1155 (3rd Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Weldon v. Kraft, Inc.,
896 F.2d 793 (3rd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Zipf v. Am. Tel. & Tel. Co.,
799 F.2d 889 (3d Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Statutory Authority**

ERISA, 29 U.S.C. § 1056(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

ERISA, 29 U.S.C. § 1056(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

ERISA, 29 U.S.C. §1056(d)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

STATEMENT OF ISSUES PRESENTED

I.    Should Plaintiff's stand alone claim for interest be dismissed where the General Motors Hourly-Rate Employees Pension Plan does not provide for interest on delayed benefit payments, where Plaintiff was not entitled to any benefits until she submitted a Qualified Domestic Relations Order that met the requirements of ERISA and where interest is not a "benefit" that can be recovered through legal action.

II.   Should Plaintiff's claim for interest be dismissed where Plaintiff cannot show that the Defendants improperly withheld the pre-retirement surviving spouse benefit from her, where surviving spouse benefits were paid to Plaintiff upon receipt of a qualified domestic relations order and where she cannot show the decision of the Plan Administrator was arbitrary and capricious.

III.  Should Plaintiff's Claims be dismissed because of her failure to exhaust available administrative remedies as required under federal law prior to commencing this litigation.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DELSIE E. BROOKENS,

                Plaintiff,

                                Case No. 07-387

vs.

                                Hon. Joseph J. Farnan, Jr.

GENERAL MOTORS CORPORATION,
a Delaware corporation; GENERAL MOTORS
CORPORATION, Plan Administrator, and
GM HOURLY-RATE EMPLOYEES PENSION
PLAN, an employee pension benefit plan,

                Defendants.

_____/

DEFENDANTS' BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY DISPOSITION

INTRODUCTION

       Plaintiff Delsie Brookens ("Plaintiff"), and David Brookens, a General Motors hourly

employee, were divorced on December 26, 1989.  As part of the divorce decree the Separation

Agreement provided that Mr. Brookens would identify Plaintiff as a beneficiary on any surviving

spouse benefits offered by his employer's pension plans.[1]

       Under the General Motors Hourly-Rate Employees Pension Plan ("GM Pension Plan"),

surviving spouse benefits are provided in the event of the death of an employee prior to retirement,

if such employee has completed ten or more years of credited service ("Pre-Retirement Surviving

Spouse Benefit), and in the event of death after retirement commenced ("Post-Retirement Surviving

Spouse Benefit"). The Pre-Retirement Surviving Spouse Benefit does not provide for, or require an

election; rather it is automatically paid to a surviving spouse.

       At the time of the death of David Brookens, he was on disability leave of absence and had

not commenced retirement. Because the marriage of Plaintiff and David Brookens had terminated

---

[1]     This separation agreement was not provided to General Motors until 2004, after the death
of David Brookens.

by divorce prior to Mr. Brookens' death, no pre-retirement surviving spouse benefits was payable unless such benefit had been preserved by a domestic relations order that met the requirements of section 206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended, ERISA, 29 U.S.C. § 1056(d)(3).

The Separation and Property Division Agreement ("Separation Agreement") attendant to the Judgment of Divorce submitted to General Motors after the death of Mr. Brookens failed to satisfy the requirement of ERISA, § 206(d)(3), and was rejected by General Motors by letter dated April 29, 2004. Nevertheless, General Motors suggested that if a proper domestic relations order was submitted, it would consider it, and if qualified (i.e., satisfied the requirements of ERISA § 206(d)(3)), would pay surviving spouse benefits to Plaintiff.[2]

On May 12, 2004, the New Castle County Family Court entered a Stipulated Amended Qualified Domestic Relations Order *nun pro tunc,* retroactive to April 30, 1990. The Amended Order was submitted to Defendants for review; it was determined the Order met the requirements of ERISA and Plaintiff was advised by letter dated November 5, 2004, that the Order was qualified.

Plaintiff began receiving monthly surviving spouse benefits commencing September, 2004. In October 2004 Plaintiff was sent a lump sum payment of $25,221.23, representing surviving spouse benefits for the period from March 1, 1992 through August, 2004.

Subsequent to these payments Plaintiff requested that Defendants pay interest with regard to the lump sum payment. Defendants rejected Plaintiff's request because the Plan does not contain any provision for interest on delayed benefit payments. Further, the lump sum payment was paid promptly after determining that the May 12, 2004 Stipulated Amended Qualified Domestic Relations Order was qualified. Additionally, no interest is payable because General Motors was not guilty of any misconduct or delay in paying the lump sum payment.

---

[2]    In truth, General Motors had no obligation to consider a domestic relations order entered and submitted subsequent to the death of the participant. See Samaroo v. Samaroo, 193 F.3d 185 (3rd Cir. 1999).

On June 18, 2007, Plaintiff filed the instant Complaint against Defendants General Motors Corporation and the GM Pension Plan ("Defendants") erroneously contending that she is entitled to receive interest on the lump sum payment. Plaintiff's claim has no merit and should be dismissed.

First, ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), allows a participant or beneficiary to recover benefits due under an ERISA plan. Here, the GM Pension Plan does not provide for interest on delayed benefit payments. Therefore, Plaintiff's sole claim for interest does not seek to recover a "benefit" due under the GM Pension Plan and should be dismissed. Second, even if Plaintiff's claim for interest is viable it should still be dismissed. Interest on delayed benefits can be recovered only where it can be shown the payments were withheld in violation of the plan or in violation of ERISA provisions and that the decision to withhold the benefits was arbitrary and capricious. Plaintiff cannot establish either showing in this case. Here, Defendants had no obligation to pay Plaintiff survivor benefits until such time she presented a domestic relations order that met the requirement of ERISA. In addition, Plaintiff cannot show that Defendants' determination that the Separation Agreement did not constitute a qualified order under ERISA § 206(d)(3) was arbitrary and capricious. General Motors was within its rights to require a qualified domestic relations order before surviving spouse benefits were paid. Accordingly, Plaintiff's claim should be dismissed.

STATEMENT OF FACTS.

    A.    The GM Pension Plan is an Employee Pension Benefit Plan Governed by the Employee Retirement Income Security Act of 1974, as Amended

The GM Pension Plan is an employee pension benefit plan under section 3(2)(A) of the Employee Retirement Income Security Act of 1974, as amended, ERISA, 29 U.S.C. § 1002(2)(A), and Plaintiff's claims arise exclusively under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Further, the GM Pension Plan is a collectively bargained plan, negotiated between General Motors and the International Union, UAW. Additionally, the parties (General Motors and

the UAW) have included an appeal procedure that must be pursued by participants and/or beneficiaries in the event their claim for benefits is denied in whole or in part.

At the time of the death of David Brookens on March 5, 1991, he was age 54 (date of birth: February 24, 1937) and had completed 27.9 years of credited service. (See AR 188). Under the GM Pension Plan, Mr. Brookens was not eligible to commence retirement at the time of his death. See Article II, § 2, Early Retirement of the Plan, (AR 19).[3]

Nevertheless, the GM Pension Plan provides a pre-retirement surviving spouse benefit under Article II, § 11, applicable to participants who died prior to being eligible to commence retirement, (See AR 32-33). This section provides in relevant part as follows:

> In the event the employe or former employe predeceases the designated spouse while the pre-retirement survivor coverage provide hereunder is in effect, the designated spouse shall be eligible, during the further lifetime of such spouse, for a monthly benefit commencing on the first of the month following the month in which the employe or former employe would have become eligible, except for the fact that he died, to retire at the option of the employe.

(AR 33). Article II, § (c) provides as follows:

> (c) The survivor coverage provided hereunder shall be effective with respect to a spouse to whom the employe or former employe is married, but only if the couple shall have been married throughout the one-year period ending on the date of the employe's or former employe's death.

(AR 33). Nevertheless, section (d) provides that this pre-retirement surviving spouse benefit can be preserved if so provided in the terms of a qualified domestic relations order:

> (d) Subsections (b) and (c) notwithstanding, if an employe or former employe marries or remarries, such coverage shall be in effect in favor of his spouse upon such marriage or remarriage, unless, in the case of a remarriage, a Qualified Domestic Relations Order within the meaning of I.R.C. 414(p) requires such coverage to remain in effect for the former spouse.

(AR 33). Applying the above provisions, at the time Mr. Brookens died, he was not married, there was no qualified domestic relations order in effect and thus no surviving spouse benefits were payable to Plaintiff. After Mr. Brookens' death, General Motors was provided with a copy of the

---

[3]     In order to be eligible for early retirement the participant had to have completed 30 years of credited service, been between age 55 and 59 with age plus service equal to 85, or had attained age 60 with 10 years of credited service.

Separation Agreement dated April 30, 1990, (AR 195-202). This Separation Agreement did not meet the requirements of ERISA, § 206(d)(3) and was rejected by letter dated April 29, 2004.

Nevertheless, General Motors advised that it would accept a domestic relations order, and if such order is qualified, would pay surviving spouse benefits to Plaintiff. Such an order was submitted by letter dated May 13, 2004. On November 5, 2004, General Motors advised that the order was qualified and commencing September 1, 2004, Plaintiff received monthly surviving spouse benefits. Further, Plaintiff received a lump sum payment of $25,221.23 representing surviving spouse benefits payable from March 1, 1992 through August 31, 2004.

B.    Plaintiff's Divorce From David Brookens And Relevant Provisions Of The Separation And Property Division Agreement

Plaintiff's former husband, David Brookens, was an hourly employee at General Motors. As an hourly employee the terms and conditions of his employment and his benefit entitlement were governed by applicable provisions of the GM-UAW National Agreement entered into between General Motors and the UAW. Further, the entitlement to pension benefits is governed by applicable provisions of the GM Pension Plan, incorporated within the Supplemental Agreement Covering Pension Plan (AR 1-65).

Plaintiff and David Brookens were married on January 21, 1959 (AR 152). They divorced on December 26, 1989 in the Family Court for the State of Delaware, New Castle County (AR 195). On March 5, 1991 David Brookens died while on a disability leave of absence from General Motors (AR 143). At the time he died, Mr. Brookens was not eligible to retire under the GM Pension Plan (AR 190).

On April 16, 1998, Plaintiff inquired about any benefits to which she might be entitled as a result of Mr. Brookens' death (AR 143). In response to her inquiry, on February 7, 2001, the General Motors Pension Administration Center ("PAC") sent a letter to Plaintiff requesting that she provide her social security card, birth certificate, Mr. Brookens' death certificate and their marriage certificate (AR 149). The letter specifically informed Plaintiff that to be eligible for any benefits,

"you must have been married to the former employee for at least one year prior to their date of death." Id. A copy of the February 7, 2001 letter is attached as Exhibit A.

Plaintiff submitted the requested documents, (AR 149-153), copies attached as Exhibit B. Plaintiff did not provide a copy of her Judgment of Divorce or the Separation Agreement. After reviewing the documents submitted by Plaintiff, on January 23, 2002, the PAC informed Plaintiff she was not eligible for any surviving spouse benefits. A copy of the January 23, 2002 letter is attached as Exhibit C (AR 206) and provided in relevant part as follows:

> In accordance with the provisions of the General Motors Hourly-Rate Employees Pension Plan....the benefit is payable *only* to a surviving spouse if the marriage was in affect for at least one year prior to the former employee's date of death. As you did not meet this requirement, there is no benefit payable.

(AR 206, italics in original).

Plaintiff called the PAC on November 18, 2002 to again inquire about her eligibility for benefits, and again was informed she was not eligible (AR 143-144). Thereafter, on February 23, 2004, Plaintiff, through her present counsel, sent a letter to the PAC seeking eligibility for survivor benefits (AR 193). A copy of this February 23, 2004 letter with attachments is attached as Exhibit D.

In the letter Plaintiff admitted that the parties never executed a "formalized QDRO requesting that [Plaintiff] be certified as an alternate payee of Mr. Brookens, based on the survivor benefits provided under his GM Pension plans." Id. Plaintiff's counsel enclosed the Separation Agreement dated April 30, 1990. Plaintiff sought survivor benefits from the date on which Mr. Brookens would have turned 55, and been eligible to retire from GM, to the present date, including interest (AR 194).

The Separation Agreement failed to identify the GM Pension Plan and contained only the following provision with respect to retirement benefits the Separation Agreement states:

> Husband shall designate Wife irrevocably as survivor beneficiary of any insurance or pension benefits provided through Husband's employment to which Wife would have been entitled as a surviving spouse had the parties not divorced.

(AR 198).

- 6 -

On April 29, 2004 the PAC responded to Plaintiff's letter informing her that she was not eligible for surviving spouse benefits. A copy of the April 29, 2004 letter is attached as Exhibit D. In relevant part the letter stated:

> Mr. Brookens died March 5, 1991 and was divorced from his spouse, Delsie Brookens at that time. The Separation and Property Agreement dated April 30, 1990 contains a statement that Mr. Brookens was to designate Delsie as a beneficiary for any survivor benefits from his employer provided pension plan. Mr. Brookens was a participant in the General Motors Hourly-Rate Employees Pension Plan and was not eligible to retire at the date of his death. A former spouse is entitled to pre-retirement survivor benefits only if a Qualified Domestic Relations Order has preserved that right. The Separation Agreement you sent does not satisfy the QDRO requirements of the Employee Retirement Income Security Act of 1984, as amended, Section 206(d). Therefore, no survivor benefits are preserved for Delsie by that document. Because the Separation Agreement does demonstrate an intent to preserve the survivor option, a DRO can be prepared, entered with the court and submitted to PAC for review. If 'qualified', it will be implemented prospectively based on the date received by the center.

(AR 190). The PAC enclosed a QDRO booklet to assist Plaintiff and her counsel in preparing a domestic relations order "assigning the survivor benefit." Id.

On May 12, 2004, a Stipulated Amended Qualified Domestic Relations Order ("Amended Order") was entered in the New Castle County Family Court (AR 183-187). On May 13, 2004, Plaintiff's counsel wrote to the PAC enclosing a copy of the Amended Order and requesting surviving spouse benefits be paid to Plaintiff, (AR 181-187). A copy of Plaintiff's May 13 2004 letter with the enclosure is attached as Exhibit E. The Amended Order was entered *nun pro tunc* with an effective date of April 30, 1990 (AR 187). Specifically, the Order stated that GM would pay to Plaintiff "a survivor benefit based on the amount of pension entitlement of Participant, as available as of the death of Participant in accordance with the terms of either or both Plans..." (AR 183-184).

On June 30, 2004 Plaintiff, through her attorney, sent a follow-up letter again seeking surviving spouse benefits and also requesting that she be paid interest on the surviving spouse benefit payments. Id. A copy of the June 30, 2004 letter is attached as Exhibit F (AR 177-178).

On November 5, 2004 the PAC determined that the May 12, 2004 Stipulated Amended Qualified Domestic Relations Order entered by the New Castle County Family Court met the

requirements of a QDRO under ERISA. The PAC informed Plaintiff she would be designated as the surviving spouse for "purposes of the Plan's pre-retirement surviving spouse benefit." A copy of the PAC letter dated November 5, 2004 (AR 156-157) is attached as Exhibit G. Plaintiff's surviving spouse benefits commenced on September 1, 2004 in the amount of $169.27 per month. Further, in October 2004, she received a retroactive benefits payment in the amount of $25,221.23 representing surviving spouse benefits from March 1, 1992 through August, 2004 (AR 156). Additionally, the PAC letter advised Plaintiff her request for interest was denied because the Plan did not provide for such payments:

> With respect to the matter of interest on the benefits payable to the Alternate Payee, the GM Hourly-Rate Employee Pension Plan does not contain any provision for the payment of interest. The Pension Administration Center is not able to deviate from the Plan language in processing the benefit payment

(Exhibit G, AR 156). The letter also directed Plaintiff to submit any further inquiries about her benefits or interest on those benefits to the Plan Administrator and provided the Plan Administrator's address. Plaintiff continued to seek interest from General Motors despite being previously told the Plan did not provide for payment of interest on any benefits, delayed or otherwise (See AR 156-157).

On May 27, 2005, Plaintiff, ignoring the direction to send further inquiry to the Plan Administrator, again sent a letter to the PAC, requesting interest on her surviving spouse benefits (AR 154-155). A copy of this May 27, 2005 letter is attached as Exhibit H. The letter threatened that a lawsuit would be filed if Plaintiff did not receive the interest she requested (AR 155).

When GM failed to remit to Plaintiff the interest payment she sought, she filed the instant suit.[4] For the reasons discussed below, this suit is without merit and should be dismissed.

---

[4]    Plaintiff's Complaint refers to a July 19, 2005 letter wherein GM informed Plaintiff it would not pay her interest on the delayed benefit payments. A copy of the letter was not attached to the Complaint, GM does not have a copy and as such no copy of the letter was included in the Administrative Record.

STANDARD OF REVIEW

Determinations made by General Motors under its GM Pension Plan are subject to review under the arbitrary and capricious standard. The GM-UAW Supplemental Agreement Covering Pension Plan delegates to the Board of Administration the responsibility for considering appeals arising from a denial of benefits (AR 12, Section 3(a)(6)-(9)). The parties have collectively bargained that decisions of the Board of Administration are final and binding on the Union and its members, the employee or employees involved, and on General Motors:

> (9)    There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union, its members, the employee or employees involved, and on the Corporation.

(AR 12).

Three federal decisions have considered the applicable standard of review for determinations made by the Board under the above procedures. In Lord v. General Motors Corp., 39 F.3d 1182 (6th Cir. 1994) (unpublished, copy attached) the Court reviewed the decision of the Pension Board of Administration which denied a claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Court explained:

> Section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan. The "arbitrary and capricious" standard of review applies when a plan affords the administrator discretionary authority to construe the terms of the plan or to determine eligibility. Here, Section 3(a) of the Supplemental Agreement Covering Pension Plan empowered the Board of Administration to make final decisions regarding matters within its authority. In addition, Section 3(c) authorized the Board of Administration to formulate procedures for resolving disputes. The procedures enacted generally provided that independent doctors were to make final and binding determinations concerning benefit eligibility. Therefore, in view of this discretionary authority vested in the administrator, the "arbitrary and capricious" standard applies.

Lord, slip opinion p. at 2 (citations omitted). Similarly in Roberson v. General Motors Corporation, 801 F.2d 176 (6th Cir. 1986), the Court reviewed a section 502(a)(1)(B) claim for benefits arising from a decision under the GM Pension Plan. Again the Court explained that the standard of review was whether the determination was arbitrary and capricious:

- 9 -

> The district court properly concluded that the appropriate standard of review of the board's denial of disability pension benefits to appellant is whether such action was arbitrary or capricious. "The standard for court review of a determination to deny pension benefits is whether the denial was arbitrary, capricious, or in bad faith." Id. at 180 (citations omitted).

See also Hawkins-Dunn v. General Motors Corp., 225 Fed.Appx. 358, 360 (6th Cir.2007) (copy attached) (Court found that the GM Pension Plan "gives the plan administrator authority to construe the terms of the plan, courts will only overturn the administrator's decision if it is arbitrary and capricious.")

In summary, the Court's review of determinations made by the Board of Administration under the GM Pension Plan are subject to the arbitrary and capricious standard. Further, Plaintiff cannot avoid the application of this standard merely because she failed to exhaust the available appeal procedure.

LEGAL ARGUMENT

I.    The Separation And Property Division Agreement Entered On April 30, 1990 by the Family Court In New Castle County Does not Constitute A Qualified Domestic Relations Order Under Section 206(d) Of ERISA

The Separation Agreement entered by the Family Court in New Castle County does not constitute a qualified domestic relations order ("QDRO") under section 206(d)(3) of ERISA, 29 U.S.C. § 1056(d)(3). Therefore, the Agreement did not, and could not, vest the right to any surviving spouse benefits in the Plaintiff.

Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) provides that: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."[5] Section 206(d)(3) provides that a QDRO is an exception to the anti-alienation requirement. However, in order to be a QDRO the order must satisfy requirements of section 206(d)(3)(C). Under 29 U.S.C. §1056(d)(3)(C), the domestic relations order must "clearly specif[y]" the following: (1) the name and last known mailing address of the participant (if any) and the name and mailing address of each alternate payee; (2) the amount or percentage of the participant's benefits to be paid by the plan to

---

[5]    Article VII, Section 3 of the Plan satisfied this provision of ERISA (AR 45).

each such alternate payee, or the manner in which such amount of percentage is to be determined; (3) the number of payments or period to which such order applies and (4) each plan to which such order applies. Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 274 fn.1 (3rd Cir. 2007). Furthermore, under §1056(d)(3)(D), a domestic relations order will be considered a QDRO only if it: (1) does not require a plan to provide any time or form of benefit, or any option, not otherwise provided under the plan; (2) does not require a plan to provide increased benefits and (3) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a QDRO. Id. The Separation Agreement entered on April 30, 1990 satisfied none of these requirements.

Applying the above to the present matter, it is clear that Plaintiff's April 30, 1990 Separation Agreement does not meet ERISA's QDRO requirements. First, the Agreement does not provide Plaintiff's or Mr. Brookens' mailing addresses. Second, it does not state the percentage of Mr. Brookens' benefits that are to be paid to Plaintiff. Third, and most importantly, the Agreement does not identify the plan to which the Agreement applies. See O'Neil v. O'Neil, 136 F.Supp.2d 690, 694 (E.D.Mich. 2001) (finding a divorce judgment not to constitute a QDRO because, among other reasons, no specific life insurance policy was referenced); Sun Life Assur. Co. of Canada v. Sullivan, 206 F.Supp.2d 191, 196 (D.Mass. 2002) (finding domestic relations order unqualified under ERISA because it applied by its terms simply to "his group life insurance").

Plaintiff had no interest in Mr. Brookens' pre-retirement benefits from GM as a surviving spouse based on the Separation Agreement. Thus, General Motors properly rejected Plaintiff's claim for surviving spouse benefits in 2002, and its determination was neither arbitrary nor capricious.

II.     Plaintiff's Stand Alone Claim For Interest Should Be Dismissed Because Interest Is Not A "Benefit Due"

The only claim asserted by Plaintiff in her Complaint is an action to recover interest on the lump sum surviving spouse benefit payment she received in October 2004. A stand alone claim that

only seeks to recover interest on a delayed benefit payment cannot be maintained under ERISA and should be dismissed.

The decision in <u>Green v. Holland</u>, 480 F.3d 1216 (11th Cir.2007) provides guidance. In that case the plaintiff obtained a retroactive award of disability benefits and brought suit seeking to recover interest on the retroactive award. The plan did not contain any provision for the payment of interest on the retroactive disability benefits award. <u>Id.</u> at 1221. Nonetheless, the plaintiff claimed he was entitled to interest because (1) interest was an implied benefit under the terms of the plan and §502(a)(1)(B) of ERISA and (2) interest falls within the area of "other appropriate relief" of §502(a)(3). <u>Id.</u> at 1222. The court rejected both these arguments and affirmed the dismissal of the plaintiff's claim for interest.

First, relying on the plan's lack of a provision for interest on delayed benefits and past precedent the court found plaintiff could not maintain a stand-alone claim for interest under §502(a)(1)(B):

> Although Green concedes that the Plan makes no mention of accrued interest in its description of the Plan benefits, he argues that we should construe interest as an "implied term of the plan." [citation omitted]
>
> We are reluctant, however, to imply benefits into the terms of an employer pension plan where such benefits are not expressly designated. <u>Id.</u> At 1222-1223.
> * * * *
> ....Green seeks to bring a stand-alone action for accrued interest on benefits that were delayed but eventually paid out in a retroactive, lump sum payment, despite the fact that the pension Plan at issue fails to provide for interest as a benefit. Because a cause of action under §502(a)(1)(B) is limited to those claimants seeking to recover "benefits due them under the terms of the plan," and because *Flint* makes clear that an independent cause of action for interest will not lie under §502(a)(1)(B) when the pension plan fails to provide for such interest as a benefit, the district court acted properly in concluding that Green's §502(a)(1)(B) claim failed as a matter of law.

<u>Id.</u> at 1224. The court also rejected Green's argument that he was entitled to the interest under §502(a)(3) of ERISA because he was unable to establish any violation of the plan or ERISA's provisions by the employer. <u>Id.</u> at 1226. <u>See also</u> <u>Clair v. Harris Trust and Savings Bank</u>, 190 F.3d 495, 497 (7th Cir.1999)(Plaintiff's action to recover interest on delayed benefits payments failed because, "interest is not a benefit specified anywhere in the plan, and only benefits specified in the

plan can be recovered in a suit under section 502(a)(1)(B)."); <u>Scott v. Central States, Southeast and Southwest Pension Plans</u>, 727 F.Supp 1095 (E.D.Mich.1989)(Retiree was not entitled to interest which accrued during 12 years between the time he applied for retirement benefits and the time he received lump-sum payment; pension plan did not provide for payment of interest due to delays in processing claims and extra-contractual damages are not allowed under ERISA.).

The result should be no different in this case. Here, General Motors, without any obligation to do so, voluntarily decided to pay Plaintiff surviving spouse benefits after she submitted a QDRO that met ERISA's requirement (AR 183-187). In <u>Samaroo v. Samaroo</u>, 193 F.3d 185 (3rd Cir. 1999), the Court rejected a *nunc pro tunc* amendment to a divorce decree entered after the death of a pension plan participant that awarded pre-retirement surviving spouse benefits to the participant's former spouse. The District Court found that the *nunc pro tunc* order did not constitute a qualified order because it required the plan to pay benefits not otherwise payable, i.e., increased benefits:

> The district court examined the statutory requirements for a QDRO under 29 U.S.C. § 1056(d)(3)(C) and (D). The court held that the amended divorce order satisfied the specificity requirements of section 1056(d)(3)(C), but not the substantive requirements of section 1056(d)(3)(D). Under that section a domestic relations order is not a QDRO if it requires the plan to provide any type of benefits not otherwise provided by the plan or to provide increased benefits. 29 U.S.C. § 1056(d)(3)(D)(i) and (ii). The court relied on the reasoning of *Hopkins v. AT & T Global Information Solutions Co.,* 105 F.3d 153, 156 (4th Cir.1997), to conclude that entitlement to a survivor's annuity in respect of Samaroo had to be determined as of the day Samaroo died, and that the amended divorce decree represented an attempt to obtain increased benefits from the Plan.

193 F.3d at 189. The Court of Appeals affirmed the District Court's holding, further explaining:

> When Samaroo died without remarrying or naming Robichaud as alternate payee of the survivor's rights, the right to dispose of the benefits lapsed. Allowing Samaroo (or his estate) to preserve the right to confer the benefits on a new wife as long as he was alive and had the possibility of remarrying, and then to designate Robichaud as the surviving spouse after his death, is allowing him to have his cake and eat it, too.

193 F.3d at 191. Despite the holding in <u>Samaroo</u> and that fact that under this decision, General Motors had no obligation to honor the Amended Order submitted after the death of Mr. Brookens, it did provide the surviving spouse benefit to Plaintiff. Apparently, dissatisfied, she now seeks interest on the benefits to which she was never entitled.

- 13 -

In summary, Plaintiff has not obtained any "benefits due" under ERISA pursuant to a court judgment and then sought to obtain interest as part of that award. Rather, this case involves a wholly separate, stand-alone cause of action for interest. As shown above those suits are not permitted, in particular where the plan, as in this case, does not provide for the payment of interest on any delayed benefits payments. Plaintiff's claim should be dismissed.

III.    Assuming Arguendo That Plaintiff Has Pled A Viable Claim, She Is Not Entitled To Interest On Her Delayed Surviving Spouse Benefit Payments

On May 13, 2005 Plaintiff submitted a Stipulated Amended Qualified Domestic Relations Order that was entered by the New Castle County Family Court on May 12, 2005, *nun pro tunc* to April 30, 1990 (AR 183-187). Only after Plaintiff submitted this Order to the Pension Administration Center, and it was determined it met the requirements of a QDRO under ERISA, did Plaintiff become entitled to the pre-retirement surviving spouse benefits. Accordingly, in September, 2005 she commenced receiving $169.27 per month and in October, 2005, received a lump sum payment of over $25,000.00. Plaintiff is not entitled to any interest on this lump sum payment because the payments were not withheld in violation of any Plan provision and Defendants' decision that the Separation Agreement did not satisfy the requirements of ERISA was neither arbitrary nor capricious.

In Fotta v. Trustees of the United Mine Workers of America, 319 F.3d 612 (3rd Cir.2003)(Fotta II), the plaintiff sought to recover interest on delayed disability benefit payments. The district court rejected the plaintiff's claim for interest and the court of appeals affirmed the decision. The court reasoned that in order to collect interest on delayed benefits payment, a plaintiff must first show the payments were wrongfully withheld:

> Section 502(a)(3)(B) allows a beneficiary of an ERISA plan to sue for "other appropriate equitable relief," which we have held includes interest on delayed payments. [citations omitted]. Section 502 (a)(3)(B) does not, however, allow a beneficiary to sue for equitable relief for any reason, but only, "(i) to redress [violations of ERISA or the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. §1132(a)(3)(B). As we emphasized in *Fotta I,* §502(a)(3)(B) "does not ... authorize appropriate equitable relief *at large,* but only 'appropriate equitable relief' for the purpose of 'redress[ing

> any] violations or enforc[ing] any provision of ERISA or an ERISA plan [citations omitted]. Accordingly, an ERISA beneficiary who seeks interest on delayed payments must first prove that those payments were withheld in violation of his ERISA plan or of ERISA itself. *See Jackson v. Fortis Benefits Ins. Co.,* 245 F.3d 748, 749-750 (8th Cir.2001) (requiring "a showing that the plan was breached before interest on back payments may be awarded under [§502(a)(3)(B)]."); *Holmes*, 213 F.3d at 128 (noting that "ERISA permit action to recover interest on wrongly withheld benefits"); *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497-499 (7th Cir.1999)(hold that ERISA "authorizes suit to redress plan violations ," but concluding there was no breach of ERISA or terms of the plan); *Anthuis*, 971 F.2d at 1007-1008 (upholding an award of prejudgment interest when the plaintiff's severance benefits were withheld in violation of an ERISA plan). We conclude that it is clear from the case law that unless a beneficiary proves his payments were wrongfully withheld, he is not entitled to interest.

Id. at 616 (italics in original). In addition to showing that the benefit payments were wrongfully withheld, the Court further stated that the plaintiff had to show that the fund acted wrongfully, which required a showing that its decision was arbitrary and capricious:

> Assuming for the sake of argument that the District Court applied the correct standard, [plaintiff] advances an alternative argument. He urges us to reverse the District Court on the basis that the Fund did wrongfully delay his benefits.
>
> In order to prove the Fund acted wrongfully, [plaintiff] must meet a high standard. The Fund's plan grants the Fund discretion in making eligibility determinations, giving it in Article VIII.A, B(a) "full and final determination as to all issues concerning eligibility for benefits." Thus, the Fund's eligibility determinations are wrongful only if they are arbitrary and capricious.

Id. at 617.

A.    GM did not Wrongfully Withhold from Plaintiff the Pre-Retirement Surviving Spouse Benefits

In this case, Plaintiff is unable to show that Defendants either wrongfully withheld her surviving spouse benefits or that the decision that the Separation Agreement was not qualified under ERISA § 206(d)(3) was arbitrary and capricious. First, Plaintiff's April 30, 1990 Separation Agreement failed to meet the requirements of a QDRO under ERISA. Thus, General Motors had no obligation to pay Plaintiff and surviving spouse benefits. Once Plaintiff submitted the May 12, 2004 Amended Order, Defendants, processed the Order, determined that it met the requirements of ERISA § 206(d)(3) and  paid Plaintiff the pre-retirement surviving spouse benefits.

      B.     Defendants' Decision to Deny the Surviving Spouse Benefits was Neither Arbitrary nor Capricious

Even if Plaintiff could show that the pre-retirement surviving spouse benefits were wrongfully withheld, which she cannot, she is unable to establish that Defendants' decision was arbitrary and capricious. Certainly, it cannot be arbitrary and capricious for a Plan to follow the law and ensure that benefits are paid only to those who are eligible to receive the benefits. There is nothing arbitrary and capricious about Defendants' first requiring Plaintiff to submit a QDRO that met ERISA's requirement before it began paying her the pre-retirement surviving spouse benefits. *See* United Mine Workers of America v. Helen Mining Co., 762 F.2d 1155, 1160 (3rd Cir.1985)("...when the trustees have consistently and literally followed an unambiguous benefit eligibility requirement that was bargained for and that was set forth in an employee benefit plan, that action cannot be called arbitrary and capricious by a court unless enforcement would violate federal law or policy.")

      C.     Plaintiff's Anticipated Reliance on *Skretvedt v. E.I. DuPont de Nemours* is Misplaced

It is anticipated that Plaintiff will claim that Skretvedt v. E.I. DuPont de Nemours, 372 F.3d 193 (3rd Cir.2004) contradicts the above opinions and permits the recovery of interest on delayed benefit payment. In Skretvedt the plaintiff sought to obtain interest on delayed benefits that DuPont had voluntarily paid to him. The Court held that interest could be recovered under ERISA §502(a)(3)(B) as restitution by way of a constructive trust. Id. at 205. However, the Court held that a plaintiff seeking to recover interest, even on benefits paid voluntarily, still had to satisfy the requirements of Fotta II - that the benefits were wrongfully withheld and that the decision to withhold the benefits was arbitrary and capricious. Id. at 215. Moreover, on remand, this Court determined that Skretvedt was not entitled to interest on the delayed benefits because he failed to show that DuPont wrongfully withheld or delayed paying the benefits in question. Skretvedt v. E.I. DuPont de Nemours, 2006 WL 3623705, *10 (D. Del. 2006) aff'd in relevant part 2008 WL 131701

- 16 -

(3rd Cir.2008)(Affirmed magistrate judge's ruling that plaintiff was not entitled to interest on delayed benefits because such benefits were not wrongfully withheld) (copy attached).

Here, Plaintiff had no entitlement to the pre-retirement survivor benefit under the GM Pension Plan until such time she submitted a QDRO that met the requirements of ERISA. Only then was Plaintiff eligible for benefits and it was then that she commenced receiving such benefits. In these circumstances where General Motors did not act wrongfully, no interest is payable.

IV.    Plaintiff's Claims Should Be Dismissed Because of Her Failure to Exhaust Available Administrative Appeals

Section 503 of ERISA, 29 U.S.C. § 1133, requires every employee benefit plan to include a procedure affording participants review of an adverse decision of a claim for benefits. The Summary Plan Description booklet "What You Should Know About Your Benefits" (AR 66-142), advises of the appeal procedures available when a claim for benefits is denied in whole or in part. (See AR 130-131). With respect to a claim regarding the GM Pension Plan, the booklet advises:

> If you do not agree with a GM decision that has been made with respect to (1) your age, (2) the amount of your credited service, or (3) the computation of your benefits, you may appeal this decision to your local pension committee. If (1) the local pension committee is unable to agree on your appeal, or (2) the committee agrees but you do not, you case may be referred to the GM-UAW Board of Administration. If the Board members fail to agree, the Board may appoint an impartial chairman to resolve the dispute. The decision of the (1) Board, or (2) impartial chairman will be binding on all parties.

(AR 131). In addition, the letter from the PAC denying her request for interest advised her to contact the Plan Administrator and provided the address. Plaintiff did neither. Thus, she failed to exhaust available appeal procedures before commencing this litigation.

Under ERISA, internal administrative remedies must be exhausted prior to bringing suit in federal court. Harrow v. Prudential Ins. Co., 279 F.3d 244 (3d Cir.2002) (" 'Except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.' " (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d

- 17 -

Cir.1990); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889 (3d Cir.1986)). (See also Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980) ("[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA].")).

In part, courts require exhaustion of administrative remedies because trustees "are granted broad fiduciary rights and responsibilities under ERISA and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." Amato, 618 F.2d at 567 (observing exhaustion helps to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.").

The law in other circuits is consistent. Several decisions of the Sixth Circuit describe the purpose of the exhaustion requirement. In Baxter v. C.A. Muer Corp., 941 F.2d 451, 453 (6th Cir. 1991), the plaintiff sued his employer under ERISA § 502 after he applied for and was denied medical benefits under his employer's health plan. 941 F.2d at 452. The trial court granted the employer summary judgment, holding in part that the plaintiff should have exhausted his administrative remedies prior to bringing suit. Id. at 453. In upholding the trial court's decision, the Sixth Circuit held forth at length on the purposes of ERISA's exhaustion requirement:

> Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement. It would be 'anomalous' if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized. (citation omitted)

941 F.2d at 453. The court further noted that the exhaustion requirement allows plan administrators to manage their funds efficiently, correct their errors, interpret plan provisions, and compile a factual record to assist a court in reviewing their actions. Id. In concluding that the plaintiff should have exhausted his administrative remedies, the court expressly held that "[t]he

fact that permissive language was used in framing the administrative review provision makes no difference." Id. at 454.

In Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980), the Ninth Circuit recognized that Congress intended that cases arising under ERISA arise in similar fashion as cases under LMRA § 301. Hence, claimants are required to exhaust available appeal procedures prior to commencing litigation. Further the Court, recognizing that ERISA explicitly requires employee benefit plans to include appeal procedures and authorizes the Secretary of Labor to promulgate regulations in that regard, observed that these procedures should be exhausted. See 618 F.2d at 567. Accord: Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st Cir.) cert. denied, 488 U.S. 909 (1988); Mason v. Continental Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985), cert. denied, 474 U.S. 1087 (1986); Kross v. Western Electric Co., 534 F. Supp. 251 (N.D. Ill. 1982) aff'g on plaintiff's failure to exhaust and rev'g in part on other grounds, 701 F.2d 1238 (7th Cir. 1983); Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3rd Cir. 1990) (Because plaintiff failed to present any evidence that he exhausted administrative remedies as required by ERISA, summary judgment was granted to defendant on the ERISA claim.).

Moreover, requiring exhaustion of remedies prevents the "premature interference with an employee benefit plan's remedial provisions, the exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." (Citation omitted) Makar v. Health Care Corp. of the Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989).

In summary, Plaintiff's claims should be dismissed because of her failure to fully exhaust available appeal procedures.

<u>CONCLUSION</u>

Based on the above, Defendants respectfully request that Plaintiff's claims be dismissed with prejudice and that Defendants' Motion for Summary Judgment be granted.

Respectfully submitted,

s/David M. Davis

David M. Davis
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 S. Old Woodward Ave., Suite 400
Birmingham, Michigan 48009
(248) 645-0800
E-mail: dmd@hardylewis.com

s/ Margaret F. England

Margaret F. England (Bar No. 4248)
Local Counsel for Defendants
Eckert, Seamans, Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
(302) 425-0430
E-mail: mengland@eckertseamans.com

Dated: March 31, 2008