```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

DELSIE E. BROOKENS,           :
                              :
        Plaintiff,            :
                              :
    v.                        : Civil Action No. 07-387-JJF
                              :
GENERAL MOTORS CORP, et al.,  :
                              :
        Defendants.           :
```

John M. Stull, Esquire of Wilmington, DE.

Counsel for Plaintiff.

David M. Davis, Esquire of HARDY, LEWIS & PAGE, P.C. of Birmingham, MI.
Margaret F. England, Esquire of ECKERT, SEAMANS, CHERIN & MELLOTT, LLC of of Wilmington, DE.

Counsel for Defendants.

**MEMORANDUM OPINION**

July ___, 2008

Farnan, District Judge

Pending before the Court are the cross-motions for summary judgment filed by Defendants General Motors Corporation and the General Motors Hourly Rate Employees Pension Plan ("Defendants") (D.I. 19) and Plaintiff Delsie E. Brookens ("Ms. Brookens")(D.I. 27). For the reasons discussed, Defendants' motion will be granted and Plaintiff's motion will be denied.

I. Background

On June 18, 2007, Plaintiff Delsie E. Brookens filed this action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., against Defendants General Motors Corporation and the General Motors Hourly Rate Employees Pension Plan. (D.I. 1.) By her complaint, Ms. Brookens seeks interest or "disgorgement of profits" on the lump sum payment of $25,221.23 for the twelve and a half years between David Brookens's death in March 1992 and Defendants' payment of the lump sum in October 2004.

Ms. Brookens and David Brookens were married on January 21, 1959, and divorced on December 26, 1989. (D.I. 19, Exh. B.) On April 30, 1990, Ms. Brookens and David Brookens entered into a Separation and Property Division Agreement ("Separation Agreement"), which provided that "Husband shall designate Wife irrevocably as survivor beneficiary of any insurance or pension benefits provided through Husband's employment to which Wife

1

would have been entitled as a surviving spouse had the parties not divorced." (D.I. 17, Administrative Record "AR" at 198.)

At the time of his death on March 5, 1991, David Brookens had completed 27.9 years of credited service as a wage-hour employee of General Motors Corporation. (AR 188.) Under the General Motors Hourly Rate Employees Pension Plan ("Pension Plan"), Mr. Brookens was not eligible to begin retirement at the time of his death. (See AR 19.)

The GM Pension Plan is an employee pension benefit plan under section 3(2)(A) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1002(2)(A), and provides a pre-retirement surviving spouse benefit under Article II, § 11.[1] (AR 32-33.) Article II, § (c) provides;

> (c) The survivor coverage provided hereunder shall be effective with respect to a spouse to whom the employe or former employe is married, but only if the couple shall have been married throughout the one-year period ending on the date of the employe's or former employe's death.

(AR 33.) Subsection (d), however, provides that the pre-retirement surviving spouse benefit can be preserved if so provided in the terms of a qualified domestic relations order:

---

[1] Benefit determinations made by Defendants' Pension Plan administrators are appealable to a Board of Administration, as provided for in the General Motors-United Auto Workers ("GM-UAW") Supplemental Agreement Covering Pension Plan. (AR 12.) Pursuant to the collective bargaining agreement between GM and the UAW, decisions of the Board of Administration are final and binding on the Union and its members, the employee or employees involved, and on General Motors. (Id.)

2

> (d) Subsections (b) and (c) notwithstanding, if an employe or former employe marries or remarries, such coverage shall be in effect in favor of his spouse upon such marriage or remarriage, unless, in the case of remarriage, a Qualified Domestic Relations Order within the meaning of I.R.C. 414(p) requires such coverage to remain in effect for the former spouse.

(AR 33.)

On April 16, 1998, Ms. Brookens contacted Defendants and inquired about any benefits to which she might be entitled as a result of David Brookens's death. (AR 143.) On February 7, 2001, the General Motors Pension Administration Center ("PAC") responded to Ms. Brookens's inquiry by requesting that she provide her social security card, birth certificate, Mr. Brookens' death certificate and their marriage certificate. (AR 149.) Ms. Brookens submitted the requested documents, and on January 23, 2002, the PAC informed her that she was not eligible for any benefits because she was not married to Mr. Brookens during the year prior to his death. (AR 206.)

On February 23, 2004, Ms. Brookens, through counsel, sent a letter to the PAC seeking survivor benefits and enclosing, for the first time, the Separation Agreement. (AR 193.) On April 29, 2004, the PAC responded to Ms. Brookens's letter by informing her that she was not eligible for surviving spouse benefit. (AR 190.) In pertinent part, the PAC's April 29, 2004 letter stated:

> ... The Separation Agreement you sent does not satisfy the QDRO requirements of the Employee Retirement Income Security Act of 1984, as amended, Section 206(d). Therefore, no survivor benefits are preserved for Delsie by that document.

3

> Because the Separation Agreement does demonstrate an intent
> to preserve the survivor option, a DRO can be prepared,
> entered with the court and submitted to PAC for review.  If
> 'qualified,' it will be implemented prospectively based on
> the date received by the center.

(Id.)

On May 12, 2004, a Stipulated Amended Qualified Domestic Relations Order ("Amended Order") was entered in the New Castle County Family Court. (AR 183-187; D.I. 19, Exh. E.)  It was entered nunc pro tunc with an effective date of April 30, 1990. (Id.)  On June 30, 2004, Ms. Brookens sent a second letter requesting surviving spouse benefits and also requesting that she be paid interest on the surviving spouse benefits payments. (AR 177-78.)

On November 5, 2004, the PAC determined that the May 12, 2004 Amended Order met the requirements of a QRDO under ERISA, and informed Ms. Brookens that she would be designated as the surviving spouse for purposes of the Pension Plan's pre-retirement surviving spouse benefit. (AR 156-57; D.I. 19, Exh. G.)  The PAC began distributions of Ms. Brookens surviving spouse benefit on September 1, 2004, in the amount of $169.27 per month, and provided a retroactive benefit payment of $25,221.23 in in October 2004, representing surviving spouse benefits from March 1992 through August 2004. (Id.)  By its November 5, 2004 letter, the PAC informed Ms. Brookens that her request for interest on the lump sum payment was denied because the Pension

4

Plan did not provide for such payments. (Id.)

On May 27, 2005, Ms. Brookens sent another letter to the PAC requesting interest on her surviving spouse benefits (AR 154-55), and on June 18, 2007, Ms. Brookens initiated this action.

**II. Legal Standard**

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 151 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the

5

language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted). However, the mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

**III. Discussion**

    A.    Defendants' Motion

By their motion, Defendants contend that Plaintiff's claim should be dismissed because (1) Plaintiff cannot show that Defendants improperly withheld the surviving spouse benefit from her, or that a decision of the Plan Administrator was arbitrary and capricious; (2) the Pension Plan does not provide for interest on delayed benefit payments, and interest is thus not a "benefit" that can be recovered through legal action; and (3) Plaintiff failed to exhaust her available administrative remedies prior to filing this action. Each of Defendants' three contentions is independently dispositive of Ms. Brookens's claim.

Defendants first contend, assuming arguendo that she has

6

pled a viable claim, that Ms. Brookens is not entitled to any interest on the lump sum payment because the surviving spouse benefits were not withheld in violation of any Pension Plan provision, and Defendants' decision that the Separation Agreement did not satisfy the requirements of ERISA was not arbitrary and capricious. Beyond benefits due under the terms of a plan, section 502(a)(3)(B) of ERISA permits a beneficiary of an ERISA plan to sue for "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). This statutory language encompasses claims for interest on delayed payments, Anthuis v. Colt Industries Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992), but only "(i) to redress [violations of ERISA or the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan," 29 U.S.C. § 1132(a)(3)(B). Accord Fotta v. Trustees of the United Mine Workers of American, 319 F.3d 612, 616 (3d Cir. 2003)("Fotta II")(compiling cases)("[I]t is clear from the case law that unless a beneficiary proves his payments were wrongfully withheld, he is not entitled to interest"). "Wrongfulness" in the ERISA context, where a benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, is reviewed under the arbitrary and capricious standard.[2] Firestone

---

[2]"Under the arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a

7

Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Fotta II, 319 F.3d at 617.

The Court must thus determine whether Defendants' decision that Ms. Brookens's original Separation Agreement did not constitute a Qualified Domestic Relations Order ("QDRO") under section 206(d) of ERISA was wrongful, to such an extent that it was arbitrary and capricious.[3] Section 206(d)(3) provides that a QDRO is an exception to ERISA's general rule that benefits may not be assigned or alienated. 29 U.S.C. § 1056(d)(3). A domestic relations order is a QDRO if it meets the requirements of 29 U.S.C. §§ 1056(d)(3)(C) & (D):

> (C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies--
>   (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>   (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>   (iii) the number of payments or period to which such order applies, and

---

matter of law [and] the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000) (internal quotation marks omitted).

[3] The arbitrary and capricious standard applies because the GM Pension Plan vests final and binding authority in the Board of Administration. See Lord v. General Motors Corp., 39 F.3d 1182 (6th Cir. 1994)(finding, upon review of the exact Pension Board of Administration involved here, that the "arbitrary and capricious" standard applies "in view of the discretionary authority vested in the administrator").

>              (iv) each plan to which such order applies.
>
>     (D) A domestic relations order meets the requirements of
>     this subparagraph only if such order--
>          (i) does not require a plan to provide any type or form
>          of benefit, or any option, not otherwise provided under
>          the plan,
>          (ii) does not require the plan to provide increased
>          benefits (determined on the basis of actuarial value),
>          and
>          (iii) does not require the payment of benefits to an
>          alternate payee which are required to be paid to
>          another alternate payee under another order previously
>          determined to be a qualified domestic relations order.

29 U.S.C. §§ 1056(d)(3)(C) & (D).

In contending that it properly rejected Ms. Brookens's claim for surviving spouse benefits based upon her original Separation Agreement, Defendants highlight the ways in which the Separation Agreement did not meet ERISA's QDRO requirements: it (1) did not provide Ms. Brookens's or Mr. Brookens's mailing addresses; (2) did not state the percentage of Mr. Brookens's benefits that are to be paid to Ms. Brookens; and (3) did not identify the plan to which the agreement applies.  In response, Ms. Brookens contends that "regardless of the lack of entry of a QDRO, Delsie hereby has established her claim for survivor benefits under the General Motors Hourly-rate Pension Plan," citing Skretvedt v. E.I. DuPont de Nemours, 372, F.3d 193 (3d Cir. 2004).  Ms. Brookens does not address any of the specific statutory factors.

After reviewing the parties' contentions, the Court concludes that Plaintiff has not established that Defendants' determination that the original Separation Agreement did not

9

constitute a QDRO under section 206(d) of ERISA was wrongful under the arbitrary and capricious standard. To begin, Ms. Brookens's reliance on Skretvedt is misplaced. As the Skretvedt court ruled, under Fotta II, recovery of interest on an ERISA benefit requires a wrongful withholding of or delay in paying benefits. Skretvedt, 372, F.3d 193, 215. Defendants articulate plausible justifications for their action based on the language of section 206(d)(3), and Ms. Brookens has not attempted to rebut these rationales, or to argue in any way that Defendants' initial denial was arbitrary and capricious. The Court therefore concludes that Ms. Brookens has not established that Defendants wrongfully withheld benefits prior to issuing the lump sum payment in October 2004, and that Ms. Brookens is thus not entitled to interest on the lump sum payment pursuant to section 502(a)(3)(B). See Fotta II, 319 F.3d at 616.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment. The Court will not address Defendants' remaining contentions.

B.   Plaintiff's Motion

By her motion, Ms. Brookens contends that she has established her right to interest on the delayed payment of the surviving spouse benefit. As discussed above, the Court concludes that Ms. Brookens has not established that Defendants wrongfully withheld benefits prior to issuing the lump sum

10

payment in October 2004, and that Ms. Brookens is thus not entitled to interest on the lump sum payment pursuant to section 502(a)(3)(B). Thus, the Court will deny Plaintiff's Motion for Summary Judgment.

## IV. Conclusion

For the reasons discussed, the Court concludes that Ms. Brookens has not established that Defendants acted arbitrarily and capriciously in denying her surviving spouse benefits prior to October 2004, and that Ms. Brookens is thus not entitled to interest on the lump sum payment pursuant to section 502(a)(3)(B). Accordingly, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

An appropriate order will be entered.